TRASHER, Garnishee of SHAWEN *vs.* EVERHART, *a. d. b. n.* of WALTMAN.—*December*, 1831.

In attachment causes, as against the garnishee, according to our practice, the short note filed at the time of issuing the attachment, is substituted for a declaration.

It is in general true, that foreign laws are facts which are to be found by the jury; but this rule is not applicable to a case in which the foreign laws are introduced for the purpose of enabling the court to determine, whether a written instrument is evidence. In such case, the evidence always goes in the first instance, to the court, which, if the evidence be clear and uncontradicted, may, and ought to decide, what the foreign law is, and act accordingly.

If what the foreign law is, be matter of doubt, the court may decline deciding it, and may inform the jury, that if they believe the foreign law attempted to be proved, exists, as alleged, then they ought to receive the instrument in evidence, if not, they should reject it.

In an attachment cause, upon a short note in *assumpsit,* the plaintiff proved a single bill of the debtor, as his cause of action, and proposed to prove to the jury, that the instrument of writing in question, was executed in *Virginia,* for the purpose of showing, that by the laws of that State, a single bill is not a specialty. The County Court permitted the evidence to go to the jury. HELD, upon appeal that the evidence was for the court exclusively.

It is an universal principle, governing the tribunals of all civilized nations, that the *lex loci contractus* controls the nature, construction, and validity of the contract. The exceptions are, where it would be dangerous, against public policy, or of immoral tendency, to enforce that construction here.

The *lex loci contractus,* is never looked to, to determine the remedy which should be used, and the process to be issued, to enforce a contract. These are determined by the *lex fori.* So an action of *assumpsit* cannot be maintained here, upon a single bill made in *Virginia,* which, according to the laws of that State, is not a specialty, but according to our law, is.

From the earliest period of our judicial history, a scrawl has been considered as a seal. It is not necessary that it should be adopted by the obligor, by a declaration in the body of the bond or single bill, to make it his seal. It is sufficient, if the scrawl be affixed to the bond or bill, at the time of its execution or delivery; and that is presumed (in the absence of other proof,) from the fact that the obligee is in possession of an instrument, with a scrawl attached to it.

APPEAL from *Frederick* County Court.

On the 18th of March, 1828, the appellee, *Joseph Everhart,* as administrator *d. b. n.* with the will annexed, of *Jacob Waltman,* obtained a warrant for an attachment, against the

lands and tenements, goods and chattels, of *David Shawen* and *George W. Shawen,* and at the time of filing the same, exhibited the following short note: "Action of *assumpsit* in *Frederick* County Court. The plaintiff's cause of action in this case, arises upon a joint promissory note, bearing date the seventeenth day of September, in the year 1822, whereby, two years after date, the defendant promised to pay to the said *Jacob Waltman,* in his life-time, or order, the just and full sum of $372, with interest thereon from the date hereof, for value received; which said sum, with the interest thereon accrued, is still unpaid and unsatisfied, except in so far as the same is credited, and to recover the balance, whereof amounting to the sum of $338 82, this suit is brought." &c. Upon the return of the attachment, the appellant, *Archibald Trasher,* appeared as garnishee, and pleaded *non assumpsit,* and that the property levied on belonged to him, and not to the said *David* and *George W. Shawen.* Issues were taken to the these pleas.

1. At the trial the plaintiff offered to read in evidence to the jury, the following instrument of writing, being the same on which the present proceeding is founded. "$372. Two years after date, with interest from this date, we promise to pay to *Jacob Waltman,* or order, the just and full sum of three hundred and seventy-two dollars, for value of him received, this 17th day of September, 1822; *David Shawen,* (sl.) *George W. Shawen,* (sl.)" The admissibility of which, being objected to by the defendant, upon the ground that it was a single bill, and not the foundation of an action of *assumpsit,* the plaintiff then offered to prove to the *jury,* by a competent witness, that the instrument of writing in question was executed in *Virginia,* for the purpose of showing, that by the laws of that State, the said instrument is a promissory note, and not a single bill; the defendant thereupon objected, that the said evidence was not proper for the jury, but should be directed to the court. This last objection was overruled, and the evidence submitted to the jury; the defendant excepted.

2. After having proved that said instrument was executed in *Virginia*, and it having been admitted, that by the laws of that *State*, it would there be considered and treated as a promissory note; the defendant objected, that in *Maryland* it was not evidence in an action of *assumpsit*, but the court overruled the objection, and permitted the instrument to be read to the jury.   The defendant excepted, and the verdict and judgment being against him, he appealed to this court.

The case was argued before STEPHEN, ARCHER, and DORSEY, J.

*Palmer*, for the appellant, contended, in this case three questions are presented for the consideration of the court. 1. In this State, a scrawl, or a mark made with a pen, in the form of a seal, is *per se*, a seal, and that it is not necessary to be expressed in the body of the instrument, that it was the intention of the parties to give it the effect of a seal. This question depends upon a uniform practice and usage in this State, sanctioned by our courts, and acquiesced in by all classes of the community, from the earliest history of the State.   It has always been considered by the profession in *Maryland*, that a scrawl with a pen of L. S. at the end of the name, is a seal, and to have the same effect as wax. It has become the common law of the *State*, *and to* disturb a practice and usage so uniform, and of such long duration, would, in all probability, be productive of great mischief, by affecting titles, and destroying vested rights.   It is admitted, that a scrawl with a pen, would not, in *England*, constitute a seal, and would not be noticed as such, even if it were expressed in the body of the instrument, that the parties intended it as such.   In *England*, " a seal is wax, with an impression."     *Coke*, 3 *Inst.* 169.   *Perkins, sec.* 134.  2 *Leon.* 21.     Before the conquest, the *English* did not seal with wax, but they usually made a cross of gold on the parchment, and sometimes an impression on a piece of lead.   *Jac. Law Dic. seal.*     In the time of *Wm. I.* the

king and the nobility used seals of arms, which were after-
wards followed by the gentry; and in the reign of *Edw. III.*
seals with devices, became common with all sorts of per-
sons. 2 *Nelson*, 207. It would seem to follow, that "wax
with an impression," was not used anciently in *England*,
but that usage and custom, of later years, have made wax
necessary for a seal. Wax, in *England*, is *per se*, a seal,
and requires no expression in the body of the instrument,
to show that the parties intended it as such. This case
must be decided either according to the common law of
*England*, or the usage, or common law of this *State*. If the
former is to govern, the scrawl cannot be noticed as a seal,
nor considered as such, as wax is necessary to constitute a
seal; and the expression in the body of the instrument,
showing the intention of the parties, could make no differ-
ence. It is not the expression in the body of the instrument,
that constitutes the scrawl a seal, but it is the scrawl itself,
being substituted for wax, by usage and practice in this
*State*. The decisions of our sister States upon a question
like the one before us, can have no influence upon the
court. The different States have decided the question ac-
cording to their local law and customs. *New York* is the only
State, it is believed, that has adhered to the common law—
wafer or wax is required in that State. *Warren vs. Lynch*,
5 *Johns.* 240. In *Pennsylvania*, a scrawl with a pen is
*per se*, a seal, and requires no expression in the body of the
instrument, to shew the meaning of the parties. *Taylor
vs. Glaser*, 2 *Serg. and Rawle*, 504. *Long vs. Ramsay*, 1
*Serg. and Rawle*, 72. *McDill vs. McDill*, 1 *Dall.*63. In *Vir-
ginia*, to constitute a scrawl a seal, an expression in the body
of the instrument is necessary, to shew the intention of the
parties. *Jones vs. Temple and Logwood*, 1 *Wash. Va.* 42.
*Blair vs. Blairgrove, Ib.* 170. *Austen Ex'r. vs. Whitlock,
Ex'r*, 1 *Mun.* 487. *Anderson vs. Bullock, et al.* 4 *Ib.* 442. In
*New Jersey*, a written scrawl is not good as a seal, except
upon instruments for the payment of money. 1 *Hals.* 169.
*Sou.* 449. In *S. Carolina*, wafer or wax is not necessary

to make a seal, but a scrawl with a pen, including **L. S.** in the hand writing of the obligor, is a seal.  *Ralph and Co. vs. Gist,* 4 *Mc Cord,* 267.   *U. States vs. Coffin, Bee,* 140.

2. When a question occurs before a court of law, whether certain evidence be competent or not, the determination of which depends upon certain preliminary facts, those facts must be decided by the court, and the evidence of such preliminary facts, are not admissible and proper to go to the jury.  *Claytor vs. Anthony,* 6 *Ran.* 285.  *Jackson vs. Frier,* 16 *Johns.* 193.   2 *Philips' Ev.* 88.   No evidence is proper to go to the jury, unless it be to prove the truth of the facts in issue.   The admissibility of such evidence would be calculated to mislead the jury.   The object of the evidence offered in this case, was not to prove any fact in issue between the parties, but to lay the foundation for the admissibility of evidence to prove the facts in issue, as a preliminary fact upon which the competency of the evidence depended.   The law of *Virginia* in relation to the contract in question, was not in issue to the jury in this case; it is a preliminary fact, to be decided by the court, before the contract can be admitted to the jury in this form of action; and before the jury can act upon the case.   The only question then is, whether the court or the jury are to decide the preliminary fact, as to the law of *Virginia?*   How could the jury decide such a fact, before the contract was admitted to go to them?   The competency of the evidence must be decided upon before the jury retire to act upon the case, which precludes the idea that the evidence of the preliminary fact ought to be addressed to the jury.   This question is precisely like that of the lost bond.   The case of *Jackson vs. Frier,* 16 *Johns.* 193, is decisive of this case.   The evidence ought to have been addressed solely to the court.

3. An action of *assumpsit* cannot be sustained in this State upon a sealed note, or specialty, executed in the State of *Virginia;* although an action of *assumpsit* would be the proper form of action in that State; debt is the proper form

of action here. The law of the place where a contract is made, or to be performed, is to govern as to the nature, validity, construction, and effect of such contract: but the remedy, or the manner of enforcing such contract, is to be governed by the *lex fori.* The rights of the parties, and remedy, have frequently been confounded, and the profession has found great difficulty in running a practical line be tween cases of the *lex loci contractus* and the *lex fori.* But it is now clearly settled, that the form of the action, the pleadings, and all judicial proceedings, in relation to contracts, are to be governed by the *lex fori.* If the remedy was to be governed by the law of the place where the contract was made, it would be difficult for counsel to know what form of action to bring upon foreign contracts; and, in truth, they could not institute suit with safety, until they took time to ascertain the mode of judicial proceeding, of the State or country where the contract in question was made. This would lead to endless difficulty and delay, and in many instances, impede the creditor from a speedy action, to the loss of his claim. The principles contended for in this case, are fully sustained by the highest judicial tribunals in this country and *England. Andrews and Jerome vs. Herriot,* 4 *Cowen's Rep.* 508. *Decouche vs. Savetier,* 3 *John's Chan. Rep.* 202. *Whitemore vs. Adams,* 2 *Cowen's Rep.* 626. *De Sobray vs. De Laistre,* 2 *Harr. and Johns.* 228. *Dixon vs. Ramsay,* 3 *Cranch's Rep.* 323. *Sicard vs. Whale,* 11 *Johns. Rep.* 194. *Pearsall, et al. vs. Dwight, et al.* 2 *Mass. Rep.* 89. *Nash vs. Tupper,* 1 *Caine's Rep.* 402. *Duplein vs. De Roven,* 2 *Vern. Rep.* 540. 3 *Esp. Rep. (note)* 164. The dispute in this case is, whether the action shall be debt or *assumpsit* upon the contract in question. As to the form of action, the court cannot look beyond the contract itself. The right of the parties and the effect of the recovery, will be the same in either form of action. *Andrews vs. Herriot,* 4 *Cow. Rep.* 510. The only case to be found, which teaches a different doctrine, is the case of *Meredith vs. Hinsdale,* 2 *Cain's*

*Rep.* 362, which was much shaken by the decision of *War-ren vs. Lynch,* 5 *John. Rep.* 237, and expressly overruled by the case of *Andrews vs. Herriott.* In the case of *Adams vs. Kerr,* 1 *Bos. and Pall.* 360, this question was brought before the court, but the case was compromised before deci-sion. In *Connecticut,* promissory notes and bonds are put upon the same footing; but when an action is brought in the courts of *New-York,* the creditor is told by the court, that they consider the contract of a different nature; that what he took as a specialty, shall be no more than a simple contract debt. This is changing the nature of the contract, as it relates to the remedy; but not as to the rights of the parties. *Lodge vs. Phelps,* 1 *John's Cases,* 139. 2 *Cain's Cas. Error.* 321. The same principle is decided in *Milne vs. Graham,* 1 *Barn. and Cresw.* 192. The statutes of limitations, of a foreign State or country, are in no case pleadable in our courts; but our own statutes of limitations are applicable to all actions. The cases which have been decided upon this subject, are decisive of the question under consideration; they all clearly go to show that the form of the action, and the pleadings in the cause, must be governed by the *lex fori,* and not the *lex loci. Tappan vs. Poor,* 15 *Mass. Rep.* 419. *Ruggles vs. Keeler,* 3 *Johns. Rep.* 263. *Harper vs. Hampton,* 1 *Harr. and Johns. Rep.* 453. *Ib.* 612. *Graves vs. Graves,* 2 *Bibb. Rep.* 207. *LeRoy vs. Crown-inshield, Mason's Rep.* 151.

*W. Schley,* for the appellee. 1. The evidence of what was the law of *Virginia,* the place where the note was made, was properly submitted to the jury. *De Sobry vs. De Laistre,* 2 *Harr. and Johns.* 229. But if the evidence on that subject should have been addressed to the court, the allowing it to go to the jury is not the ground for the reversal of the judgment. *Jackson vs. Frier,* 16 *Johns. Rep.* 196. If the evidence was adequate to establish the fact, the party is not prejudiced, and has, therefore, no right to complain. It was proved, or admitted, that according to

the laws of *Virginia*, the instrument sued on was a promissory note, and the question upon this exception is, could it be offered in evidence, to support the issue on the part of the plaintiff. 2. It has never been decided in *Maryland*, that a mere scrawl, affixed to the signature, *per se*, constituted what would otherwise be a note, a bill obligatory. There must be some expression in the body of the paper, showing that the party adopts it as his seal. In *England*, there must be an impression on wax ; and the same is the law in all the States north of *New Jersey*. 4 *Kent's Com.* 444. The early practice in *Maryland* was in conformity with the common law of *England ;* and the custom of adopting the scrawl being in derogation of that common law, should not be enlarged. If the mere scrawl makes an instrument a specialty, then a party who holds a note barred by limitations, or wishing to exclude inquiry into its consideration, may easily effect his purpose, by affixing one to the signature. 3. But in this case, it is immaterial what the rule upon this subject may be,—the instrument, by the *lex loci contractus* is a promissory note ; it is then a promissory note here, and the remedy adopted, for the recovery of such a claim, in our courts, is that, which has been adopted in this case. Considering this a note, the *lex fori* prescribes the action of *assumpsit*, for the enforcement of the obligation which it creates. If, by the law of *Virginia*, *covenant* was the proper form of action on a promissory note, would it be contended that if a suit was brought in *Maryland*, on a note made in the former State, that, that form of action should be pursued. Where no place of performance is specified in the contract, the legal presumption is, it was intended to be performed at the place where it was made. *De Sobry vs. De Laistre*, 2 *Harr. and Johns.* 219. Now, as in the note in question, no place of performance is designated, the parties are to be presumed to have contemplated its performance in *Virginia*. It was there made, and intended to be treated, as a *simple contract*. The obligation of such a contract was designed to be created, and none other. Its *consideration*, according

to the views of the parties, was to be open to examination; and yet it is contended, that by resorting to the courts of a different jurisdiction, you exalt this simple contract, into a specialty, and thereby exclude any such inquiry. On this point, he cited *De Wolf vs. Johnson,* 10 *Wheat.* 367. *Harrison vs. Sterry,* 5 *Cranch,* 298. *Camfranque vs. Burnell,* 1 *Wash. C. C.* 340. *Willing and Francis vs. Consequa,* 1 *Peter's C. C.* 301. *Andrews vs. Herriott,* 4 *Cowen,* 511. *(note.) Meredith vs. Hinsdale,* 2 *Caines,* 362.

ARCHER, J., delivered the opinion of the court.

This was an attachment issued at the suit of the plaintiff, to affect the goods of the defendant, for the purpose of satisfying a debt, alleged to be due from the defendant to the plaintiff. The short note, which accompanied the *capias,* stated the cause of action to be a joint promissory note of the defendants, given to the testator of the plaintiff. The substance of the short note is referred to, because, according to our practice, it is substituted in this kind of proceeding for the declaration, and because the questions in this cause, grow out of the form which the short note has assumed. The *garnishee* appeared, and pleaded *non assumpsit,* and property in himself to the goods attached, and issues having been joined, and the court having refused permission to the plaintiff to read in evidence the cause of action, upon the ground that the same was a specialty, and not a promissory note, he then offered in evidence to the jury, that the cause of action was executed in *Virginia,* for the purpose of showing, that by the laws of that State, it was a promissory note, and not a single bill. It is contended, that in the admission of this evidence to the jury, the court committed an error, and that it was evidence for the court, and not for the jury. It is, in general, true, that foreign laws are facts which are to be found by the jury; but this general rule is not applicable to a case, in which the foreign laws are introduced for the purpose of enabling the court to determine whether a written instrument is evidence. In such case,

the evidence always goes in the first instance to the court, which, if the evidence be clear and uncontradicted, may, and ought to decide what the foreign law is, and according to its determination on that subject, admit or reject the instrument of writing as evidence to the jury. It is offered to the court to determine a question of law—the admissibility or inadmissibility of certain evidence to the jury. It is true, if what the foreign law is, be a matter of doubt, the court may decline deciding it, and may inform the jury, that if they believe the foreign law, attempted to be proved, exists, as alleged, then they ought to receive the instrument in evidence : on the contrary, if they should believe that such is not the foreign law, they should reject the instrument as evidence. We collect from the bill of exceptions, that the object of the plaintiff in introducing this evidence of the laws of *Virginia*, was to let the instrument of writing, which was the cause of action, in, as evidence to the jury. He could have had no other object. This being the case, it was evidence for the court, and not the jury, unless the court had thought proper, in case of doubt about the evidence, to have ultimately submitted it to the jury : and that is like a case of very common occurrence in trials at *nisi prius*, where a deed is produced, and evidence of its execution is adduced, in order to let it go to the jury ; such evidence is always addressed to the court, and they determine its admissibility upon such evidence, unless in cases where the evidence of its execution is doubtful, in which case the court will let the deed go to the jury with the evidence offered of its execution, informing them that they are to receive it in evidence, if they shall believe it to have been executed, but if they should believe it was not executed, they must reject it ; or, in other words, not consider it as evidence in the cause. And in all cases of the like character, the evidence is for the court in the first instance ; the object being to ascertain whether certain testimony offered is, in point of law, competent and proper for the consideration of the jury. But it may be asked upon another ground,

whether the court were right in permitting the evidence of the law of *Virginia* upon this subject, to go to the jury, as the history of the cause shows it was offered to let in the instrument of writing as evidence. Was it material to the determination of that question ? This question must be answered by the decision of another ; whether the foreign law, or the domestic law, should, in this proceeding, regulate and fix the character of the instrument. This subject will be reviewed and examined, in the consideration of the second bill of exceptions.

In the second bill of exceptions, the court permitted the plaintiff to read in evidence to the jury, the cause of action, having first proved its execution, it being admitted that it was, by the laws of *Virginia*, where it was executed, a promissory note. The plaintiff's counsel in support of the opinion of the court, as expressed in this bill of exceptions, endeavors to sustain his case, by the maintenance of one or the other of the following propositions.

1st. That the evidence was admissible, because being executed in *Virginia*, it was a promissory note there; and that the law will so treat it here.

2d. That if wrong in this, it is by the laws of this *State* a promissory note, and ought to have been received to sustain the issue.

As to the first proposition, its truth depends on this; whether the *lex loci contractus*, or the *lex fori*, is to govern? It is a universal principle, governing the judicial tribunals of all civilized nations, (for the truth of which no authority need be cited,) that the *lex loci contractus* controls the nature, construction, and validity of the contract: courts will always look to the *lex loci*, to give construction to an instrument, and will impart to it validity, according to those laws, unless it would be dangerous, against public policy, or of immoral tendency to enforce it here. They will also look to those laws, to ascertain the nature and true character of the contract, that efficacy may be given to its obligations between the parties, but they never look to the *lex*

*loci* to determine the remedy which should be used, and the process issued to enforce its obligations: these are always determined by the *lex fori*. The law demands that a discrimination should be made between the rights and the remedy. In the ascertainment of the former, the *lex loci* becomes the rule; the latter is controlled by the *lex fori*. It must be always immaterial to the creditor, in what manner his claim is enforced, whether as a simple contract, or as a specialty, so that his essential rights are protected in the one form of action, as well as in the other. As in the present case, in what manner are the rights created, and obligations incurred, affected by treating the instrument as a single bill; although, according to the law of the place, it is a promissory note? In an action of debt, its obligations are held equally sacred, and in the same manner enforced, as if the action had been *assumpsit*. If there were no other reason for the rejection of the doctrine contended for, it might be sufficient to say, that it would be a great inconvenience to fashion the remedy according to the character of the contract impressed upon it, in the country where it is made, or to be performed. Inquiries would, in all cases, have to be instituted, before a suit could be commenced, into foreign laws, to determine the nature of the remedy to be pursued, which, in many cases where evidence was not at hand, might be attended with great delay and difficulty, and consequent loss of the debt. These views are opposed by the case of *Meredith vs. Hinsdale*, 2 *Caine*, 362, in which the court adjudged, that an instrument being a specialty by the laws of *Pennsylvania*, although it was not such by the laws of *New York*, yet that it ought to be received as a sealed instrument, and that an action of debt would lie upon it. But this determination has been expressly overruled in *Andrews and Jerome vs. Herriott*, 4 *Cowen*, 508, in which the court say, that *Meredith vs. Hinsdale*, was decided without attention to the distinction, that the *lex loci contractus* governs only as to the construction of the contract, and has nothing to do with the remedy, which

is controlled by the *lex fori*.   The dispute is merely upon the remedy; that is to say, whether the action shall be covenant, or *assumpsit*, upon a given contract between two persons within the jurisdiction of the court.   The substance and effect of the recovery, is the same in either form, and they say, they cannot sanction the case of *Meredith vs. Hinsdale*, without overturning the entire class of cases which distinguishes between the *lex loci* and *lex fori*.   According to these views, the character of the instrument must be regulated by a reference to our domestic law.   But conceding that the first proposition connot be sustained, it is contended that the instrument of writing is not a specialty, but a promissory note, by the laws of this State, and that the court therefore correctly permitted it to be given in evidence, under the issue of *non assumpsit*.

From the earliest period of our judicial history, a scrawl has been considered as a seal, and it would be too late at this day, and would be attended with consequences too serious, to permit it to be questioned.   It is not necessary, as has been argued, that the scrawl must be adopted by the obligor, by a declaration in the body of the bond, or single bill, to make it his seal.   It is sufficient if the scrawl be affixed to the bond, or bill, at the time of its execution and delivery.   For, if he execute and deliver *it with the* scrawl attached, it being considered here as equivalent to the wax or wafer, it is as much his seal, as if he had declared it to be so in the body of the instrument.   The fact of the clause of attestation not appearing in the usual form of "*signed, sealed and delivered,*" can, in reason, make no difference: for the question always is, is this the seal of the obligor? and if he has delivered it, with the scrawl attached, it is his seal, and must be so considered : for whether an instrument be a specialty, must always be determined by the *fact*, whether the party affixed a seal; not upon the *assertion* of the obligor, in the body of the instrument, or by the form of the attestation.   In this case, the execution of the bill is admitted, and the plaintiff has possession of it, which *is*

evidence of delivery ; and there is nothing to show that the scrawl was not attached, when it was executed and delivered, and the presumption always would be, that the seal was affixed to the instrument on its delivery, in the absence of evidence to the contrary.

JUDGMENT REVERSED.