# ROBERT E. BARRY *vs.* PETER E. HOFFMAN and others.

Where a *scire facias* is sued out in the names of parties claiming to be assignees of the judgment, and issue is joined upon the plea that they were not *bona fide* entitled to the judgment by assignment in writing, signed by persons authorised to make the same, the plaintiffs are bound to show that they are entitled to maintain the writ.

A deed was executed by a bank conveying its assets to trustees in trust to convey the same to such persons as a majority of the stockholders in amount and value, or their assigns, should afterwards designate, and until such conveyance to hold the same for the payment of the debts of the bank and for the use of the stockholders. HELD :

That parties to whom the trustees afterwards conveyed the assets, though not designated in the manner prescribed, are still assignees under the other

trust, and as such are authorised to collect the assets of the bank and to revive a judgment due the bank, by *scire facias.*

A deed takes effect from delivery which is to be proved, but as a general rule all deeds *prima facie* must be taken to have been executed and delivered on the day they bear date.

The fact that all the evidence in relation to the delivery of a deed was offered on one side to show its delivery on the day of its date, does not authorise the court to assume that the jury could not find the delivery on another day.

The date of the certificate of the acknowledgment of a deed is *prima facie* evidence that the deed was acknowledged on that day, but this inference may be rebutted by proving by other evidence that the deed was delivered on some other day.

The law does not prescribe any mode of delivery; it may be by word or deed.

The attestation clause to a deed under which the witnesses sign their names, is not *conclusive* evidence that it was delivered on the day of its date, but *prima facie* only.

The *prima facie* proof furnished by enrollment, which is evidence of all circumstances necessary to give the deed validity, may be repelled.

APPEAL from Baltimore county court.

This was a *scire facias*, sued out by the appellees in their own names, to revive a judgment which had been recovered by the Bank of Alexandria against the appellant. The writ recites the recovery of the judgment in Baltimore county court at its September term 1838, and states that it was assigned by the bank to Bernard Hooe and others, and by them to the plaintiffs in the writ.

The defendant pleaded:—1st. That the bank did not assign the judgment to or for the use of the plaintiffs. 2nd. That the plaintiffs were not at any time *bona fide* entitled to said judgment by assignment in writing, signed by any person or persons authorised to make the same; and 3rd. That when the judgment was obtained the bank was a corporation, and that afterwards it became dissolved and extinct, and after such dissolution the entry to the use of the plaintiffs was made by the attorney of record of the bank, *absque hoc* that the bank assigned.

The plaintiffs joined issue upon the first plea, and replied to the second, that at the time the *sci. fa.* issued and thenceforth they were *bona fide* entitled to said judgment by assign-

ment in writing, signed by the persons authorised to make the same; and to the third, that the judgment was assigned to them in the manner and form as alleged in the sci. fa. Issues were joined on these replications.

*Exception.* At the trial the plaintiffs offered in evidence two original deeds. The *first*, dated the 3rd of March 1841, by the president, directors and company of the Bank of Alexandria, conveys all the assets of the bank to Bernard Hooe and others therein named, *in trust* to assign, transfer and convey the same "to such persons as shall hereafter be designated by a majority in number and amount of the now stockholders of the said bank, or of their assigns, in trust for the payment of the creditors of the said bank," &c.; "and until such conveyance be made, for the payment of the debts of the said bank and for the use of its stockholders, according to the principles of equity." This deed was signed and sealed by all the parties thereto, and at the bottom was the usual attestation clause, "signed, sealed and delivered in presence of" the witnesses who subscribed their names thereto. The magistrates' certificate of acknowledgment of this deed bore date 1st of February 1842, and states that the parties thereto "personally appeared" before the justices, "and acknowledged the same to be their act and deed." The parol proof in regard to the delivery of this deed is sufficiently stated in the opinion of this court.

The *second* deed, dated the 12th of July 1842, was made by the grantees in the first deed to the plaintiffs. It recites that it was made "in compliance with a resolution and order of the stockholders of the Bank of Alexandria, passed in general meeting held on the 8th of the present month, at which meeting there was present a majority in number and amount of the stockholders of the said bank," and conveys all the said assets of the bank to the plaintiffs, *in trust* that they shall, for the purpose of making a final settlement of its affairs, ascertain and collect its assets, sell its property and pay its debts, &c. At the foot of this deed was a copy of the resolution and order therein referred to, stating that at a

meeting of the stockholders of the bank, held at their late banking house on the 8th of July 1842, "in pursuance of a call made and published as required by the charter, by stockholders holding more than five hundred shares of the stock of the bank, a sufficient amount of stock being represented and held by the persons present, the meeting was organised," &c.; then follows the order appointing the plaintiffs for the purposes specified in the deed, and directing the trustees in the first deed to convey to them, &c. A witness proved that he had been a stockholder and took an active part in this meeting, comprising, as he believes, a majority in number and value of the stockholders of said bank after the date of the original deed of March 1841.

All the above proof was offered by the plaintiffs, and it was agreed that all the acts of Congress in relation to the Bank of Alexandria, and the acts of Congress and of Virginia in relation to the retrocession of Alexandria to Virginia, should be considered as in evidence, and might be read in argument in this court from the statutes at large and the printed acts of Virginia. The defendant then asked the following instructions:

1st. That unless the jury find from the evidence that the plaintiffs, the grantees in the deed of July 1842, were designated by a majority in number and amount of the persons who were stockholders of the bank at the time of the *factum* of the deed of March 1841, or of their assigns, as the persons to whom the property was to be conveyed, the plaintiffs are not entitled to maintain the *scire facias.*

2nd. That if they find from the evidence that the deed of March 1841 was not delivered until the 1st of February 1842, then the same is not valid and effective as a deed of said corporation.

3rd. This prayer was abandoned in argument in this court and therefore is not stated.

4th. That the memorandum to that deed, "signed, sealed and delivered in presence of," &c., is not conclusive evidence that it was delivered on the day of its date, and cannot avail to prevent the jury from finding from all the evidence in the

11      v.6

cause, if they shall so believe, that the said deed was not delivered until after the 3rd of March 1841, or not until the 1st of February 1842.

The court, (FRICK, C. J., and LE GRAND, A. J.,) rejected all these prayers, and to this ruling the defendant excepted, and the verdict being against him, and judgment *fiat* entered, he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*William Schley* for the appellant.

1st. The plaintiffs were not *bona fide* entitled to the judgment, *unless* they were designated as trustees by a majority in number and amount of the stockholders, or their assignees. Unless in fact they were so designated they could not under the second deed acquire a valid and *bona fide* title. The first deed makes the grantees in it *donees of a power* to convey the assets to such persons as a majority of the stockholders shall designate, and they can only convey to the parties properly designated, and they must ascertain that the parties to designate were the proper ones. Here the grantees in the first deed were to convey to such persons as a majority in number and amount of the stockholders or *their assigns* should designate. This word "*assigns*" has meaning. The right of the stockholder, as such, ceases upon the dissolution of the corporation, and after this he has a mere equitable right which he can *assign*. *Angel & Ames on Corp.*, 751. The meaning of the first deed then was not, that the *corporation* as such should designate the trustees, but a majority of them as individuals, each having several interests, and of their assignees. Notice therefore should have been given to *each one individually*. *Angel & Ames*, 452 to 455. Notice according to the charter would not do, because upon dissolution the charter ceases and the property revests. *Angel & Ames*, 159 to 162. The question then is has this been done? The recital in the deed that they did so is *not evidence* as against a *stranger;* it is *res*

*inter alios acta.* The plaintiffs therefore should have proved the meeting of the proper parties to designate the trustees by some person who was present at the meeting; there is no such proof in the case. There can be no doubt that the appellant is a party who has the right to plead such a defence.

2nd. The acknowledgment of the first deed on the 1st of February 1842, was *a fact* from which the jury might find that the deed was not sooner delivered. The corporation had then become dissolved, and could not then make such a deed. The attestation of the subscribing witnesses is only *prima facie*, and not *conclusive* evidence, that the deed was in fact delivered on the day of its date. 17 *Mass.*, 454, *Marston vs. Coburn.* If there was any evidence in the case from which the jury might infer the delivery after the date of the deed, we had the right to submit it to their consideration. 2 *G. & J.*, 404, *Davis vs. Barney.*

*Hugh L. Bond* and *Henry Winter Davis* for the appellees.

1st. The second deed conveyed the absolute legal title to the judgment, which the plaintiffs were entitled to as against the defendant without reference to the trusts declared in the first deed, which are not the subject of inquiry in an action at law. 9 *G. & J.*, 101, 106, *Chapman vs. Morris.* 10 *Do.*, 443, 457, *Matthews vs. Ward.* *Ibid.*, 326, *Bank of U. S. vs. Lyles.* 4 *Gill*, 213, 223, *Crawford vs. Brooke.* 6 *Munf.*, 358 to 368, *Taylor vs. King.* 4 *Wash. C. C. Rep.*, 38, *Bayard's Lessee vs. Colefax*, 3 *G. & J.*, 188, *Kolb vs. Whitely.* 5 *Johns. Rep.*, 43, 47, *Jackson vs. Van Dalfsen.* The act of 1829, ch. 51, under which we sue, simply requires us to be *assignees* in writing. We were not bound to allege the assignment in writing; it would have been sufficient if we had come in and proved it, there being no allegation or proof of fraud. But even if the trusts of the first deed may be noticed, it will be observed that it contains *two* trusts, *one* to assign and the *other* to hold the property *until* the assignment for the *payment of the debts* of the bank and *for the use of the stockholders* according to the principles of equity. The trust is an alternative one, and

the plaintiffs may well be assignees of the bank under the *second trust* without being designated as trustees under the *first*. But we further say that the second deed was itself *prima facie* proof of every thing necessary to its validity; of every thing except what affects third parties. The fact that the trustees were appointed by a *majority* of the stockholders was nothing by which the appellant was affected; he is no way interested under the trust, nor is he seeking to set aside the deed. We say, then, that the fact of the appointment by such a meeting, recited in the deed from the first to the second trustees, was sufficient without proof of any such meeting by other evidence. 1 *H. & J.*, 580 to 596, *Corp. of Roman Catholic Clergymen vs. Hammond.* All that the court could require here was, that there should be proper plaintiffs before it, and all that the defendant could ask was, that payment by him to the plaintiffs should be an acquittance to him. Upon the plea of payment in another action, he would not be obliged to prove the proper designation of these trustees, or that the deed was properly made. A plea of payment on the judgment would be all sufficient for him. He had, therefore, no right to allege that there was not proper notice to the stockholders. If we are required to give notice to each individual interested, and not to the stockholders, we should have to settle up the affairs of the bank before we could find out who they were, and this was the very purpose of the second deed. Such could never have been the intention of the first deed. But even if the second deed be fraudulent and void, none but a creditor can impeach it. The *bona fides* referred to in the act of 1829, ch. 51, means the absence of such fraud as stops the transfer of the title. 3 *Gill,* 213, *Crawford vs. Brooke.*

2nd. As to the delivery of the deed: There is no evidence of the delivery on any other day than that of its date, and the attestation clause is *prima facie* evidence of its delivery on that day. This is conclusive until rebutted, and there is no rebutting evidence here. 3 *Md. Rep.*, 213, *Glenn vs. Grover.* When therefore the prayer asserts that this is not conclusive evidence, it necessarily assumes that there *was evidence* that

it was delivered on some other day. But the acknowledgment does not say that the parties appeared on the day of *the date of the acknowledgment;* it is the acknowledgment of a *past completed act.* It is no part of the deed, but only necessary to its recording; the deed is a deed without it. It rests upon the other side to show that it purports a delivery of the deed on a day different from its date. See also on this point 3 *Md. Rep.,* 67, *Stewart vs. Redditt.*

TUCK, J., delivered the opinion of this court.

It was necessary under the pleadings, for the plaintiffs to show that they were entitled to maintain the *sci fa,* as assignees of the judgment.

The *first* prayer asserts that they were not so entitled unless the jury should find that they had been designated, as trustees for the bank, in the manner therein stated. Several interesting questions were argued under this prayer, but we think one of them presented on the part of the appellees is conclusive against the propriety of granting the instruction. The first deed of trust provides that the grantees and their assigns shall convey the property and effects of the bank, to such persons as might be thereafter designated, in the manner stated in the prayer, and until such conveyance be made to hold the same for the payment of the debts of the bank, and for the use of the stockholders. &c. The only interest the defendant had in the question, was the risk he might run in paying the debt to a party not entitled to receive the money. If the present plaintiffs were within either of the alternatives mentioned in the deed he was sufficiently protected. If they are not trustees designated in the manner prescribed they are still assignees under the other clause, and as such authorized to collect the assets of the bank, and to use "all and singular the ways, means and remedies for the enforcement or recovery thereof," which the bank had or might be entitled to employ. The prayer excludes this hypothesis on which the plaintiffs were entitled to sue, provided the deed was delivered, and was therefore properly refused.

The counsel for the appellees concede the law of the *second* prayer, if the deed in ·question was not delivered until February 1842. We are now dealing with an original instrument which takes effect from delivery, and this is to be proved as a fact in the cause, the time of the delivery being the important point in the present case. In *Best on Presumptions*, 181, 47 *Law Lib.*, 116, it is said to be a general rule, "that *prima facie*, all documents must be taken to have been made on the day they bear date," and several examples are given, such as letters, bills of exchange, notes and deeds, with reference to cases of authority. The principle applies in regard to deeds, as well to execution as delivery. *Smith vs. Battens*, 1 *M. & Rob.*, 341. *Stone vs. Grubbam*, 1 *Ro. Rep.*, 3 *pl.*, 5. *Ofley vs. Hicks*, *Cro. Jac.*, 264. In the case before us, the evidence did furnish proof of execution and delivery on the 3rd of March 1841, as matter of inference from the dates, and the parol proof; but the fact of all the evidence having been offered on one side, did not authorise the court to assume that the jury could not find the delivery on another day. Even if the evidence had been free from doubt, in the mind of the court, the question should have been left to the jury. *Insurance Co., vs. Corner*, 2 *Gill*, 426. 1 *Md. Rep.*, 451, *Grove vs. Brien*. The record shows some conflict on this point, between the date of the deed and the time of the acknowledgment, and also between some of the witnesses; discrepancies which a jury might perhaps have reconciled, so as to have found the delivery of the deed on the day it actually occurred. We do not deem it proper to discuss this question of fact. We shall merely indicate the portions of evidence applicable to this point, from which it was competent for the jury to have found one way or the other, according to value they might place on the testimony. Carlin and Creighton state that this deed was executed by all the parties, and delivered by the grantor in their presence. Taylor, one of the parties to the deeds, testifies that he was not present. when the others executed them; and that no person was present when he executed them, except the justices before whom they

were acknowledged, and that it was then in the custody of P. E. Hoffman, who, as he afterwards states, was an officer of the bank. According to the import of the justices' certificate of acknowedgment, it would seem to have been acknowledged on the 1st of February 1842. *Glenn vs. Grover,* 3 *Md. Rep.,* 212. *Best on Presumptions,* 181. This inference, however, it was competent to rebut, by satisfying the jury from other evidence, that it was delivered on the 3rd of March 1841. The law does not prescribe any mode of delivery. It may be by word or deed. 3 *Md. Rep.,* 79, *Stewart vs. Redditt.* 6 *Gill & Johns.,* 250. In *Budd vs. Brooke,* 3 *Gill,* 221, where the endorsement on a deed was all the evidence offered as to the time it had been admitted to record, it was said that the court below had not erred in refusing to submit that question to the jury, though if countervailing proof had been offered, the jury would have been the proper tribunal for its determination. See also *Trasher vs. Everhart,* 3 *G. & J.,* 234. This prayer should have been granted. The *third* prayer having been abandoned we express no opinion upon it. But we think there was error in the court's refusal to grant the *fourth.* The attestation clause under which witnesses sign their names, has not the conclusive effect contended for by the plaintiffs below. We know that deeds are often executed and acknowledged when the grantee is not present, and are retained by the grantor for the purpose of delivery. In *Pannell vs. Williams,* 8 *Gill & Johns.,* 511, proof of the obligor's signature, and possession by the plaintiff, the obligee, were held to be *prima facie* evidence only; in which case, also, the bond purported to have been signed and sealed by the defendant, and attested by a witness. The attestation clause surely ought not to have more effect in law than direct proof of the execution of the paper, and the possession thereof by the party appearing to be entitled to its possession, who the law presumes to have come by it honestly, until the contrary is proved.

If the plaintiffs were relying on a certified copy of a deed regularly recorded—where enrolment is evidence of all cir-

cumstances necessary to give it validity—the *prima facie* proof furnished by the enrolment might be repelled. *Crawfurd vs. State*, 6 *H. & J.*, 231. If we look at the instrument alone for evidence on this question, the attestation clause and the date of the deed would indicate the 3rd of March 1841, as the day of its delivery. But on the same principle, the certificate of acknowledgment must be taken to show the time of the acknowledgment. Each furnishes *prima facie* proof, as to a matter of fact, which the jury were the proper tribunal to have determined from all the evidence in the cause applicable to that question. Upon this and the second prayer the judgment must be reversed with a *procedendo*.

*Judgment reversed and procedendo awarded.*