## JNO. HENDERSON *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE, use of JOHN ESCHBACH.

The ordinances of the city of Baltimore in relation to paving of streets, confer on *property owners*, not only the right to have their own lots improved

DECEMBER TERM, 1855.                353

Henderson *vs.* Mayor & City Council of Baltimore, use of Eschbach.

by paving in front of them, but also the power to *compel* others to submit to and pay for such supposed improvements.

The paving tax is due immediately after the commissioners make out the lists of persons assessed, and its payment may be enforced before any portion of the paving is commenced.

The assent in writing of the proprietors of a majority of feet fronting on the street to be paved must appear to have been given before the paving is ordered, and the want of such assent may be shown as a defence to an action to enforce collection of the tax.

Where a deed is executed and acknowledged by parties living in different counties and on different days, the presumption arising from its date, that it was delivered on that day, cannot stand against the positive averments in the acknowledgments, that it was executed afterwards.

Questions arising upon the face of a deed, unconnected with parol proof, are for the decision of the court.

A prayer that there is no evidence of the assent of certain parties, " and they *not having so assented* the plaintff is not entitled to recover," is not objectionable in form; the latter clause is but a *statement* of a reason for the conclusion of law and not the *assumption* of a fact.

The certificate of the commissioners, stating that a requisite number of proprietors had assented to the paving, is not *conclusive* on the question of assent; it has but a *prima facie* effect as the warrant or authority to have the paving done, and those who act under it do so at their peril.

The authority of the commissioners as to paving of streets is special and limited, both as to its scope and effect, and when made the foundation of an action it must appear to have been exercised according to law.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* by the appellees against the appellant, to recover the amount of a *paving tax* assessed upon the defendant as his proportion for paving that part of Biddle street between Pennsylvania avenue and George street. Plea, *non assumpsit*.

*Exception.* The proof on the part of the plaintiff shows that on the 4th of May 1848, application was made to the city commissioners for paving the street in question, agreeably to the acts of Assembly and the ordinances of the city authorities, purporting to be signed by a majority of the proprietors of the feet of ground fronting on said street, and accompanied by a *private contract* made by the same parties with Eschbach for doing said paving. Among the signers to this application and contract was J. T. Shipley, representing himself as the owner of 191 feet, fronting on the street aforesaid, and these feet

45      v.8

354　　　　MARYLAND REPORTS.

Henderson *vs.* Mayor & City Council of Baltimore, use of Eschbach.

were necessary to constitute the required majority. In the course of the trial due publication of the notice of this application, as required by the ordinances of the city authorities, was proved. On the 15th of May 1848, the board of commissioners passed the following order upon said application, which order was, on the same day, *approved by the Mayor:*

"The city commissioners having given the notice required by law, and having ascertained that the owners of a majority of the feet of ground binding and fronting on Biddle street, between Pennsylvania avenue and George street, have signed the within application to pave said part of Biddle street, and having received the accompanying contract for that purpose, the city commissioners have determined that said part of Biddle street may be paved by private contract."

On the 6th of July 1848, the commissioners delivered their warrant, approved by the Mayor, to the collector, accompanied by a list of the persons liable to pay the paving tax for the same, and directing him to collect the same agreeably to the ordinance approved the 22nd of May 1838. The sum assessed to the defendant, as proprietor of a lot fronting 180 feet on this street, was $358.65. The several ordinances relating to paving in the city of Baltimore, and the ordinance relative to the paving of Biddle street, were also offered in evidence. The plaintiff also offered in evidence a deed from Ann Shipley and her children, as devisees of Johnsee Sellman, conveying to Eschbach a lot fronting sixteen feet on Biddle street. This deed is dated the 19th of April 1848. Some of the grantors resided in Baltimore city, some in Anne Arundel and Worcester counties, and some in the State of Delaware. It was acknowledged by those residing in Baltimore city on the 13th of May, by those in Anne Arundel county on the 19th of April, by those in Worcester county on the 17th of June 1848, and by those in Delaware on the 29th of May 1850, and was recorded on the first of June 1850.

The defendant then proved, that he attended at the office of the commissioners and objected to the contract being entered into, because the requisite number of feet had not been subscribed for, and then proved by J. T. Shipley, that on the

3rd of April 1848, he made an agreement with Eschbach, (which was signed by Shipley and Eschbach and offered in evidence,) that in consideration that the latter would pave before the property of the devisees of Johnsee Sellman, that they, the devisees, would convey to him a lot fronting sixteen feet on Biddle street. The agreement also declared, that in case the devisees, or any one of them, shall refuse to sanction this agreement, then it was to be null and void, and that Eschbach was not to commence paving until such consent should have been obtained, either by power of attorney to him in their names, or by signing a deed conveying the lot of ground therein mentioned to Eschbach. He also proved by the same witness, that this was the original contract between himself and Eschbach with regard to the paving of Biddle street; that he told Eschbach he did not feel authorised to sign the petition to pave for the heirs, but agreed to sign it upon the condition mentioned in the above agreement, and that Eschbach consented. The defendant then asked six instructions to the jury, only one of which, the second, need be stated:

2nd. That there is no evidence in this case to establish the fact that the proprietors of a majority of the ground binding and fronting on that part of Biddle street upon which the paving was done, as stated in the evidence, assented in writing to the application to pave said street, and they not having so assented the plaintiff is not entitled to recover.

To the refusal of the court (FRICK, J.) to grant this, as well as his other instructions, the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Benjamin C. Pressiman* and *Grafton L. Dulany* for the appellant, argued:

That under the provisions of the act of 1817, ch. 148, sec. 18, the Mayor and City Council of Baltimore are not authorised to cause any unpaved street, lane or alley, or part thereof respectively, within the city of Baltimore, to be paved without the *previous* assent, in writing, of the proprietors of the *majority* of the

ground binding and fronting on such street, lane or alley, or the part thereof, to be paved; and that there was no evidence of any such *previous* assent, either at the time when the order of the commissioners to pave was passed or at the time that the contract was entered into with Eschbach. The conditional agreement entered into by Shipley, upon its face, requires the fulfilment of certain conditions before the paving should commence, and these conditions not being fulfilled prior to the making of said contract, no *subsequent* assent will validate the action of the commissioners in ordering the paving to be done. The learned counsel then cited and commented upon the acts of 1797, ch. 54, 1817, ch. 148, sec. 18, and 1833, ch. 40, and the ordinances of the corporation of Baltimore, No. 47, approved May 22nd, 1838, and the supplement thereto, approved March 10th, 1842, ordinance No. 15, approved March 3rd, 1848, and ordinance No. 41, approved April 1st, 1848; and argued, that the ordinance of 1842, permitting the paving to be done by private contract and making the proprietors liable for the paving done under such contract, is *null and void;* it is directly in conflict with the maxim, *potestas delegata non delegari potest*, and is an absurd stretch of power, as it makes all the owners fronting on this street liable to a private contract which the city authorities never made and have no power or control over. But it is said, the order of the city commissioners directing the paving to be done, is to be regarded as a conclusive determination of the question, that a majority of proprietors did sign the application—that this is to be regarded as a *judgment* which cannot be inquired into. This, however, we submit, cannot be the construction of these proceedings. The *previous* assent of a *majority* is necessary, and is a condition *precedent* to the proper exercise of the authority vested in the commissioners to direct the paving to be done, and this may be inquired into in any case in which an attempt is made to enforce collection of the paving tax assessed under such proceedings. We therefore say, upon the principles above stated, that the court erred in refusing to grant either the first, second, fourth and fifth prayers, or all of them.

Henderson *vs.* Mayor & City Council of Baltimore, use of Eschbach.

*James Malcolm* and *J. Mason Campbell* for the appellee, after stating the provisions of the acts of Assembly and ordinances referred to by the appellant, argued, that the assent of a majority of the proprietors of ground fronting on the street to be paved, was necessary, according to the provision of the third section of the act of 1817, ch. 148, but that the tribunal designated *by law* to ascertain that fact are the city commissioners. No other body can find the fact, in the first instance, for the purpose of determining whether to pave or not to pave. They have found the assent, and state in so many words, "having ascertained that the *owners of a majority of the feet of* ground binding and fronting on Biddle street, between Pennsylvania avenue and George street, *have signed* the within *application* to pave said part of Biddle street." This is, therefore, a judicial determination of this fact by the judgment of a court of competent authority which cannot be questioned, and must, therefore, be taken as conclusive in this case. The second prayer, which asserts there was *no evidence* of an assent in writing, was correctly rejected, because this judgment of the commissioners was not only evidence, but *conclusive* evidence of this fact. The proposition in the prayer is very different from one which, conceding a *prima facie* assent, overthrows it by superior proof. The assertion is of "no evidence" of utter absence of proof, *prima facie* or otherwise, to show a written assent. Now the fact is directly the reverse, as we have shown. 2 *G. & J.,* 114, *Shilknecht vs. Eastburn.* 4 *Philips on Ev.,* 209, and cases there cited. But again, the latter clause of this prayer does not put it to the jury to find the fact of assent but *assumes* it, and for this reason was properly rejected.

Tuck, J., delivered the opinion of this court.

We do not think that the ordinances of the city of Baltimore, applicable to the present case, should receive the construction placed upon them by the counsel for the appellee to the full extent of their argument. They virtually confer on property owners, not only the right of having their own lots improved by paving in front of them, but also the power to compel others to submit to such supposed improvements, and

to pay for the same against their will; and the tax being due immediately on the commissioners making out the lists, payment may be enforced even before any portion of the work is commenced, though laid, not by the municipal authorities in the ordinary exercise of their taxing powers, but at the instance of persons who may be influenced solely by a regard for their own interests.    It is true that this is done subject to the approval of the commissioners and the mayor, acting under the provisions of the ordinances, but the machinery necessary to give them effect can be put in motion only by those so interested.    This is certainly a very high power to be possessed by any portion of citizens over others.    It may be presumed that proprietors, looking to their own interests, will not object if they can perceive that their property will be appreciated by the improvement.    But it is not difficult to perceive, that combinations may be formed for the advantage of some to the prejudice of others; and on the other hand, that a single individual, owning a majority of the feet of ground, may subject his neighbors to the operation of the ordinances when illy able to incur the expense, without, in either case, promoting the public convenience to any great extent.    To prevent the abuse of the power, certain preliminaries are prescribed which must appear to have been at least substantially complied with, and among these, as most important, is the assent of the proprietors of the requisite number of feet binding and fronting on the street to be paved.

The defendant's *second* prayer asserts, that the evidence on this point was not legally sufficient, and as this proposition, if correct, will dispose of the case, we shall address ourselves to its consideration.    There is no testimony to show that Shipley had authority to assent for the owners of the lot whom he claimed to represent.    He states in his evidence, that he told Eschbach that he did not feel authorised to sign for the heirs, but did sign upon the conditions mentioned in the agreement of the 3rd of April 1848.    The deed, bearing date April 19th, executed as a compliance with the condition on which Shipley signed the application, and relied on by the appellees as evidence of ratification, cannot be considered as operative from its

date, even if it be otherwise sufficient to remove the objection. Deeds take effect from delivery. It is manifest that this was executed and acknowledged by some of the grantors after the 4th of May, and could not have been delivered on the day of its date. There was no proof as to the delivery other than what appeared on the instrument. Being a point arising upon its face, unconnected with parol proof, it was for the decision of the court. *Barry vs. Hoffman,* 6 *Md. Rep.,* 78. Where deeds, as in this case, are executed and acknowledged in different counties, and necessarily on different days, the presumption arising from the date that the instrument was delivered on that day cannot stand against the positive averment in the acknowledgment that it was executed afterwards. Though this deed may have been executed and delivered before the work was actually commenced, of which, however, there is no evidence, it was but a performance of the condition in the agreement of the 3rd of April, and not a compliance with the prerequisites of the ordinance.

But the frame of this prayer is objected to, on the ground that the latter clause assumes the want of assent without submitting the question to the jury, and that the instruction was, therefore, well refused. We do not think so. The theory of the prayer is, that there was no legally sufficient evidence on this point. The record shows there was no proof of assent by Shipley's heirs, and without the number of front feet owned by them there was not a majority of feet. It is then a case of total failure of evidence, in the legal sense of that expression. There was nothing to be left to the jury. The purpose of the prayer was to take the case from them, on the concession that all the plaintiff's evidence offered on this point was true and that the jury would so find, yet asserting that the facts conceded did not entitle the plaintiff to a verdict. If the words objected to, to wit, "and they not having assented," had been omitted, or if, instead of these, the words "therefore," or "because they have not so assented," had been used, we suppose the prayer would have been unobjectionable in form. The language employed we consider as a mere statement of a reason for the conclusion of law, that the plaintiffs were not entitled to recover, as in the above examples.

Nor do we agree with the counsel for the appellees, that the certificate of the commissioners is conclusive on the question of assent.   At best it has a *prima facie* effect only, as the warrant or authority to have the paving done.   But the parties who act under it do so at their peril.   If it were otherwise, these commissioners might deem it necessary, in the faithful discharge of their duty, to examine the records to satisfy themselves that the persons assenting as proprietors were really owners of the lots, and in this pursuit, they would doubtless find titles on which they would be wholly incompetent to decide.   But if they did decide, the owners objecting would be bound by their judgment.   We believe that no such power was designed to be conferred on them.   Their authority is special, and limited both as to its scope and effect.   It was granted for the purpose of giving sanction to acts *in pais*, affecting the property and rights of others; but when made the foundation of an action, as here, it must appear to have been exercised according to law.

Eschbach cannot justly complain of this result.   Without waiting for the consent of the owners in legal form, he treated with a person who he knew had no authority to act for them, and as the liability of the owners not assenting depends upon the regularity of the proceedings under the ordinances, he must take the consequences of his haste.   There being a radical defect in the preliminary proceedings, the judgment must be reversed *without procedendo.*

*Judgment reversed and procedendo refused.*