[OTSEGO GENERAL TERM, July 14, 1857. *Gray, Mason* and *Balcom*, Justices.]

---

## SWIFT *vs.* THE CITY OF WILLIAMSBURGH.

The powers possessed by the common council of the late city of Williamsburgh to open, regulate, grade and pave streets, &c. instead of being general, were, by the law conferring those powers, made subject to certain important re-strictions and limitations. No proceedings could be taken to open, regulate, grade or pave any street or avenue, except upon petition signed by one-third of the persons owning land situated within the assessment limits. These provisions of law being public, and all the preliminary proceedings leading to the determination of the common council to make a particular improvement, being matters of public record in the office of the city clerk, all persons are chargeable with notice of the law and of such proceedings.

If, therefore, an individual enters into a contract with the corporation, for im-proving a street, he cannot, after having performed a portion of the work, maintain an action against the corporation to recover damages, on the ground that he was induced to enter into such contract, and to perform the work, upon the false representations of the defendants, that one-third of the owners of lands to be assessed had petitioned for the improvement, and that the corpo-ration had taken the necessary proceedings to authorize them to make the same; whereas no such petition had in fact been presented, and the corpora-tion had no power to cause an assessment for the expense of the improve-ment to be made, or to contract with the plaintiff for the performance of the work.

It is the duty of persons about to enter into a contract with the corporation for the performance of work in improving the streets, which is to be paid for by an assessment upon the district benefited, first to examine the records in the city clerk's office, to see whether a proper petition has been presented, and the other preliminary steps taken.

APPEAL from a decision made at a special term, upon the report of a referee. The complaint alleged that on or about the first day of February, 1853, the defendants, claiming

to act under their charter, represented to the plaintiff, that certain persons, being one-third of the owners of the lands in North-Seventh street, in said city, between the East river and Union avenue, had petitioned for the improvement hereinafter mentioned, and that the defendants had taken the necessary proceedings to authorize them to make such improvement under the provisions of said charter, and had such authority, and had determined to make the same and to assess the expense thereof upon the persons benefited thereby, as in such case provided by the said charter. And that upon such representations and claims, at the special instance and request of the defendants, the plaintiff entered into a contract with the defendants, whereby they mutually agreed that the plaintiff should grade, curb, gutter, bridge, pave and flag the sidewalks of said street in a certain manner, and that in consideration thereof, the defendants should proceed with all reasonable diligence to lay a sufficient assessment upon the adjacent lands benefited thereby, and collect the same with all reasonable diligence, and out of the moneys so collected pay to the plaintiff the sum of $3.40 for every foot of the length of said street along the center line thereof. And that under such contract the plaintiff proceeded to perform the work and furnish the materials required therefor, and performed a large portion of such work, to wit, the grading of such street. And that he had incurred great expense and performed a large amount of labor, in and about the providing and placing on the various parts of said street, and the lands adjacent to the same, large quantities of paving, curb and gutter stone, as necessary and proper for the further and entire performance of said work. And that at the time of making the contract aforesaid, the said representations of the defendants were each of them untrue, and that no petition, as by them represented, had been presented to them, and they had no authority to cause any assessment for the expense of such improvement to be laid or collected, and could not and did not confer any right or authority upon the plaintiff, to enter on the said street for the performance of said work to be performed by the plaintiff, and that they

subsequently, upon a petition signed by one-third of the owners of lands on said street, entered into a new contract with one John Cassidy, for the making of such improvement, and that the defendants have not made, (although a reasonable time for that purpose has long since elapsed,) and cannot make, any assessment for the payment of any damages or compensation to the plaintiff, on account of the contract made by him as aforesaid, and the matters above set forth. And the plaintiff claimed to recover against the defendants the sum of $10,000, on account of the matters aforesaid, and he prayed judgment for that sum and costs.

The reply was a general denial of the matters set forth in the answer. The referee to whom the cause was referred, dismissed the complaint; and from the judgment entered on his report, the plaintiff appealed.

*J. L. Campbell*, for the appellant.

*Samuel E. Johnson*, for the respondent.

BIRDSEYE, J. The powers possessed by the common council of the late city of Williamsburgh to open, regulate, grade and pave streets &c. instead of being general, were by the law conferring those powers, made subject to certain important "restrictions and limitations." (*See* "*Act to incorporate the city of Williamsburgh*," *Laws of* 1851, *p.* 110; *and tit.* 4, §§ 1, 2, *&c. p.* 128.) No proceedings could be taken to open, regulate, grade or pave any street or avenue, unless upon petition signed by one third of the persons owning land situated within the assessment limits, which were to be fixed in the manner directed by the act. Upon the presentation of a petition so signed, public notice was to be given that such application had been made, and of the time, (which was not to be less than thirty days after the first publication of the notice,) when the common council was to proceed on the petition. If a remonstrance was presented, signed by a majority of the persons who would be assessed for the expense of the improvement, nothing farther

could be done.  If no such remonstrance was presented, they might in their discretion allow the improvement petitioned for to be made.

I find no other power to open or regulate streets, conferred on the common council of that city ; nor were we, at the argument, referred to any other provisions of law on the subject. In this respect the present case differs altogether from the cases presented in *Cumming* v. *The Mayor &c. of Brooklyn,* (11 *Paige,* 596 ;) *Maunice* v. *The Mayor &c. of New York,* (4 *Seld.* 120;) and *Wetmore* v. *Campbell,* (2 *Sand. S. C. R.* 341.)

In the first of these cases, the chancellor says that the corporation of Brooklyn having the general powers of a corporation, were competent to enter into the contract they had there made with the complainants.  That the fortieth section of the city charter, (*see Laws of* 1833, *p.* 105,) gave *a general authority* to the common council to cause streets and avenues to be graded, paved &c., and that there was nothing in the charter which prohibited the corporation from entering into contracts for the making of such improvements.  The same powers are possessed by the common council of New York. (*See* 2 *Sand. S. C. R.* 344 ; 4 *Seld.* 130 ; *section* 175 *of Act of April* 9, 1813 ; *Davies' Laws relative to New York city p.* 526.)

Instead of conferring similar general powers on the common council of Williamsburgh, the legislature thought fit to make them, in regard to these local improvements, but little more than the agents of the owners of the adjacent lands.  No proceedings could be initiated except by the consent, and upon the petition, of one third of the persons owning the lands on which the expenses of the improvement would be assessed.  If a majority of the persons to be assessed for the expenses of the improvement, remonstrated against it, nothing further could be done.  These provisions of law were public.  The plaintiff is as much bound by them as were the authorities of the city.  All the preliminary proceedings, leading to the determination of the common council to make the improvement in question, were also matters of public record in the office of the city clerk.  As such, they

were accessible to the plaintiff, and he is fairly chargeable with notice of their contents. If, as he alleges in his complaint, no petition whatever had been presented by the owners of the property to be benefited by this improvement, and thus the first step for obtaining jurisdiction had not been taken, the slightest diligence in examining the proceedings relative to this improvement, in the city clerk's office, would have shown him the illegality and invalidity of the whole proceeding. No excuse for the failure to make these inquiries is suggested.

If the plaintiff can recover on the state of facts he has stated in his complaint, the " restrictions and limitations" which the legislature sought to impose upon the powers of the common council, will go for nothing. And yet these provisions are matter of substance, and were designed to be of some service to the constituents of the common council. They were intended to protect the owners of lands, and the tax payers of the city, as well against the frauds and impositions of the contractors who might be employed to make these local improvements, as against the illegal acts of the common council themselves in employing the contractors. But if the plaintiff can recover in this action, of what value or effect are all these safeguards ? If the common council desire to make a local improvement, which the persons to be benefited thereby and to be assessed therefor, are unwilling to have made, the consent of the owners may be wholly dispensed with, according to the plaintiff's theory. The common council have only to " represent" that the proper petition has been presented, and the proper proceedings have been taken, to warrant the improvement. They then enter into the contract. The improvement is made. Those other safeguards, for an assessment of the expenses, and for reviewing the proceedings, may or may not be taken. But when the work is completed, and is to be paid for, it is found that the common council have no authority to lay any assessment, or collect a dollar from the property benefited by the improvement. The contractor then brings his action, and recovers from the city the damages he has sustained by the failure of the city to pay him the contract price.

The ground of his action is the falsity of the representation made to him.   But the truth or falsity of such representations might have been ascertained by the party, with the use of the most ordinary care and diligence.   The existence of the proper petition, and the taking of the necessary initiatory steps to warrant the improvement were doubtless referred to and recited in the contract made with the plaintiff.   And he thus became again directly chargeable with notice of the contents of all these papers.

It is obvious that the restrictions and limitations imposed by law cannot thus be evaded.   The consent of the parties interested in such improvements cannot be dispensed with; the responsibility which the conditions precedent created by the statute impose, cannot be thrown off in this manner.   For the effect of so doing is to shift entirely the burden of making these local improvements; to relieve those on whom the law sought to impose the expense, and to throw it on others who are not liable, either in law or in morals.

The principle of this assessment· law, and of every other assessment law· of the state for similar local improvements, so far as I now recollect, is to charge the expense of the improvement on the property to be benefited thereby.   But the result of the rule sought to be established in this action would relieve that property, and make the expense a charge on the general funds of the city; to be collected by tax on all the property of the city.   It would be useless to dwell on the temptations to fraud and wrong which such a rule would hold out to the owners of property requiring improvement.   Whether such owners should seek to throw their own burdens on the shoulders of the public, by seeking an election to the common council and making the false representations, or by becoming contractors, and acting on such representations, is of no consequence.   The statute charged the expense of the opening of North-Seventh street on the owners of the adjacent lands.   The plaintiff seeks to impose that expense on the tax payers of the city generally. He is not entitled to the help of this court to effect that purpose.

It is not intended to express any opinion as to what the rights of the parties would be, if the false representations of the common council had concerned some subject which was exclusively within their own knowledge, or as to which the plaintiff had no means of acquiring information, and was chargeable with no notice, and no want of diligence in failing to obtain sufficient information on which to base his dealings with the city.

The judgment appealed from must be affirmed, with costs.

EMOTT, J., concurred.

S. B. STRONG, P. J. This is a hard case for the plaintiff, who, no doubt, acted upon the supposition that the corporation had the requisite power to make the contract.

It is unnecessary to decide whether one can recover damages from the corporation of a city by reason of the false or fraudulent representations of the common council. The difficulty in this case is that the common council transcended its powers, and therefore the corporation was not bound by their acts.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]