The City of Leavenworth v. Rankin.

---

CITY OF LEAVENWORTH v. EDMUND M. RANKIN.

*Error from Leavenworth County.*

In August, A. D. 1860, the City of Leavenworth had power to provide for grading streets and for levying and collecting taxes therefor, upon the adjacent property, with the consent of a majority of the resident owners, and had so provided by Ordinance No. 129. Under the ordinance a petition by such majority must be presented to the City Council before a contract was let, and every contract thereunder, should contain a stipulation that the city should not be held liable.

Where a petition in the Court below against such city on a contract for work in grading a street therein, contains no allegation of such presentation of such petition, and the contract sued on no such stipulation, and where the contracting party therein agrees to grade, curb, fill and remove the dirt from a certain street, and it is stipulated therein that the city shall pay "twenty cents per cubic yard for all the work above mentioned," and provides that the contractor shall "receive and collect his pay for said work according to the charter and ordinances and amendments thereto of said city,—the contract being signed by the mayor of the city under the city seal, *held* that the dirt taken from one point on the street and placed upon another point thereon, was to be measured but once, but *held* that the mayor had no authority to make such a contract, *held* that the contractor (plaintiff below,) is not entitled to recover for work done thereunder in an action upon that instrument as upon contract.

The word "grade" includes removing dirt from one point and placing it at another on a street to bring the surface to a certain line.

Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication.*

* See City of Leavenworth v. Norton, 1 Kans. R., 432.—REP.

In making contracts they must act within the limits and observe the regulations prescribed, else there will be no contract. No subsequent act of the corporation can cure the defect where they do not.

The seal of a municipal corporation attached to a contract, does not estop the corporation from inquiring into the power of its officers to make it.

Persons contracting with such corporations must inquire into their powers at their peril.

In such action the Court in charging the jury that "under the pleadings the plaintiff is entitled to recover for the number of cubic yards excavated, at twenty cents per cubic yard, and for the number of cubic yards filled at twenty cents per cubic yard," decided that the agreement set out in the petition embodied a valid contract, and should be construed as in the charge indicated in both of which conclusions the Court below erred.

This action was tried by a jury in the District Court for Leavenworth County.

The plaintiff declared on a special contract of which the following is a copy:

"These indentures entered into this 25th day of August, A. D. 1860, between Edmund M. Rankin of the County of Leavenworth, and Territory of Kansas, and the City of Leavenworth, of the same County and Territory, party of the second part, witnesseth, that the said Edmund M. Rankin, party of the first part, covenants and agrees to grade, curb, fill and remove the dirt from Seventh (7th) Street, from the center of Cherokee Street, to the north side of Oak Street, in said city, according to the plan and specifications on file in the office of the City Engineer of said city, in a good and workmanlike manner, and to complete the said work on or before the first (1st) day of January, A. D. 1861, and the said Rankin further contracts to receive his pay for said work at the rate of twenty (20) cents per cubic yard, and according to the ordinances of said City, and the said city for and in consideration of covenants above stipulated, covenants and agrees to pay to said Rankin, the said sum of twenty (20) cents per cubic yard for all the work above mentioned, thus graded, cut, filled and removed, and said Rankin further covenants and agrees to receive and collect his pay for said work according to the charter and ordinan-

ces, and amendments thereto, of said City of Leavenworth.

In witness whereof, we have hereunto set our hands this 25th day of August, A. D. 1860.

E. M. RANKIN.

Signed by me Dec. 15th, 1860.

JAMES L. McDOWELL, Mayor. [SEAL.]

and averred that he executed a bond for the faithful performance on his part of said contract, which was accepted and approved by the proper officer. That by the mutual consent of the parties, the time for performance on the part of the plaintiff, was extended to the first day of September, 1861. That the work was done according to the contract, and accepted by the city, and that in the performance of said contract, he excavated 8,347 53-100 cubic yards, and removed and filled 9,456 57-100. That by the terms of said contract, he was to receive and collect his pay according to the charter and ordinances, and amendments thereto, of said city. That by these it was the duty of the city to issue to him, upon the completion of the work, certain certificates, upon which he might proceed to collect his pay from the owners of real property liable under the charter and ordinances thereof. That the city has neglected and refused to issue said certificates. That at the time of entering into said contract the city had not taken the legal steps necessary and preliminary to be taken under the charter and ordinances of said city, before the cost of said work could be made a legal charge upon the real estate abutting thereon, or adjacent thereto, in this, to-wit: "There was not presented to the city, the consent in writing of a majority of the resident property owners of the property sought to be charged with the cost of such work, and that in the absence of such authority, the said debt is directly and primarily liable to this plaintiff for the full amount of said work."

The answer of the defendant denies every allegation of the petition except the signing of the alleged contract by James L. McDowell, Mayor. There was evidence on the

part of the plaintiff showing the amount of excavation, and the amount of work done by the plaintiff to have been 7,347 53-100 cubic yards of excavation, and 9,456 57-100 yards of embankment or filling. That with the exception of 1,380 yards, all the filling or embankment was done with the earth so excavated. That no petition of the property holders was presented to the City Council, asking that the street be graded, prior to the execution of said contract. That there was offered to the plaintiff after the completion of the work, about $1,500.00 in certificates, authorizing him to collect his pay from the property holders on said street, which he refused to accept. An ordinance, hereafter referred to, was put in evidence. Plaintiff also proved that the City Council from time to time extended the period for the completion of the contract, and when completed, accepted the work from the hands of the contractors.

None of the evidence offered on the part of the defendant was permitted to go to the jury.

The Court charged the jury:

" *Under the pleading* the plaintiff is entitled to recover for the number of cubic yards excavated, at twenty cents per cubic yard, and for the number of cubic yards filled at twenty cents per cubic yard."

The charters of Leavenworth relied upon are those contained in the amendments, as follows:

SEC. 5. That the City Council of said city shall have power to provide for the grading and macadamizing, or otherwise improving any street, lane, avenue or alley, and for the grading, paving or curbing the sidewalks in said city; and for these purposes, or any or either of them, shall have power to provide for levying and collecting a special tax on the lots of ground extending half way back through the block adjoining on either side of such street, avenue, lane or alley, or sidewalk so improved or not. Said tax to be assessed on each lot, according and in proportion to the appraised value thereof.

Sec. 6.   That the City Council, upon a legal application to grade, pave, macadamize, or otherwise improve any street, avenue, lane or alley, or to grade, pave or curb any sidewalk, shall appoint three commissioners, whose duty it shall be, after first being duly sworn to faithfully perform their duties with fidelity and impartiality, to view and appraise the property liable to taxation, for the purpose aforesaid.   The said commissioners shall make a report of such appraisement, designating therein each lot or piece of ground appraised, and the valuation of the same separately, and shall certify such report under their hands to the City Council, who may either approve or reject the same.   If such report be approved, the City Council shall thereupon proceed to levy such tax as provided for in section 5.

This act was approved February 27th, 1860.

Sec. 22.   That no assessment shall hereafter be made upon any of the real property of said city, for any improvement of the same, or the streets adjoining the same without the consent, in writing, of a majority of the resident owners of the real estate upon which such assessment may be levied.

Approved February 8th, 1859.

The ordinance (No. 129) referred to, was read in evidence in the Court below and  provides substantially as follows :

Sec. 1.   That whenever any improvement becomes necessary, the council shall proceed to order it by the passage of an ordinance by a vote of two-thirds of the members of the council.

Sec. 2 provides for the publication of the ordinance, and to invite sealed proposals; the contract for the work to be awarded by the council.

Sec. 3 provides for the signing of the contract by the mayor or the part of the city and the contractors.

Sec. 5 provides for a petition, signed by a majority of the resident property owners affected by the tax for the

46

proposed improvement, being presented to the city council before ordering the improvement.

Sec. 6 provides for appointment of commissioners to appraise the property liable to taxation.

Sec. 7 provides for assessment by the engineer of the improvements on the property subject to the tax.

Sec. 9 provides that every contract for grading, &c., should contain the stipulation "that the city shall in no event be liable to pay the person or persons so contracting for any part of said work or materials to be used for the same, except such part thereof as shall be properly chargeable on the property belonging to the city.

By Sec. 10, the contractor was entitled to receive a certificate from the city engineer for the amount assessed on each lot, which certificate was made his warrant for collecting the same.

Sec. 12 authorizes the contractors to collect the tax and to sue for it in their own names or the name of the city, and Sec. 13 provides that in default of payment the contractor was authorized to sell the property assessed. ·

Sec. 15 required the petition of the property-holders asking for improvements under the ordinance, and the report of the appraisers to be filed in the office of the city clerk.

Verdict and judgment below for plaintiff, against the city, which brings the case up on error.

*Thomas P. Fenlon* and *Stinson & Havens*, for plaintiff in error, submitted the following:

I. In the charge of the Court to the jury there was error.

1st. Under the pleading the plaintiff was not entitled to recover. The action is founded on a special contract, to which the city is alleged to have been a party. The answer admits the signature of Jas. L. McDowell, but still denies that the city executed the contract. The mayor of

a city takes no power by implication. A contract made by him beyond the scope of his power, is void. There are no presumptions in favor of his authority to bind the city. The city charter confers the power to provide for grading streets on the city council. The answer contains a denial that the council ever provided for the grading for which plaintiff recovered.

2d. The City of Leavenworth is a public municipal corporation, to which were delegated certain governmental powers by its charter. The inhabitants of the district included in its boundaries, were compelled to delegate to certain officers a limited control over their persons and property. They became members of the corporation, not of their own motion, but for the general good. The extent of the powers conferred then should be clearly defined, and the method of their exercise plainly indicated. (*See Brady* v. *Mayor of N. Y.*, 2 *Bosworth*, 184). They are not, like the officers of a private corporation, the mere agents of an artificial person, but they are officers of the government. Hence, charters are specific.

In the matter of improving streets, is involved one of the highest prerogatives of sovereignty,—the right of taxation. This power can never be exercised except when conferred by position and explicit language, and pursued strictly in the manner prescribed. It was right and proper that so important a function should be delegated to the legislative branch of the city government, and that its abuse should be guarded against by legislative restrictions and rules. This the Legislature attempted to do in the charter. *See Secs. 5 and 6, Charter of Feb. 27th, 1860, and Sec. 22 of Charter of Feb. 8th, 1859.*

Herein is a direct grant of power to provide for the improvement of streets, coupled with a power to tax, to pay for the same. This tax, however, could not be levied except with the consent, in writing, of a majority of the resident property holders to be affected by it.

With a view of carrying out these provisions of the charter, an ordinance was passed by the council, and approved May 4th, 1860, and referred to in the bill of exceptions herein as "Ordinance No. 129."

Thus the power to provide for such work, as that for which this plaintiff recovered, was vested in the city council, by the charter. The council under the power in it vested by (Sec. 3 of Art. 1, of the charter) adopted this ordinance, which, in so far as it embraces matters within the control of the council, and conflicts with no higher enactments, has all the force and effect of a law. It is a law.

The authority to contract for this work was expressly reserved to the council in the charter; but more unequivocally by the ordinance. The authority of the mayor in the premises, was purely clerical. To make this the contract of the city, it should have been made by the council, and signed by the mayor. This contract then, having been denied by the city, has not been proved to have been the contract of the corporation in its inception.

3d.    Was the contract ratified by the council? At the time the contract was signed the ordinance above referred to, was in force. It prescribed that grading and other improvements should be ordered by a two-thirds vote. It requires at least as much authority to ratify a void contract as to make a valid one originally. "The power to ratify *ex vi termini*, implies the power to have made the contract, and the power to ratify in a particular mode, implies a power to have made the contract in that manner." *Brady* v. *the Mayor*, 2 *Bosworth*, 187.

No improvement could be ordered, save upon the consent in writing, of certain property holders, (this alike by the charter and the ordinance.) That consent never was had as is shown affirmatively. The manner in which the council shall contract is also pointed out. All these things must have been done before the council could have bound the city to this contract. Because the work was commenced

The City of Leavenworth v. Rankin.

without any valid contract or agreement, it cannot be seriously argued that all the restrictions of the charter and the ordinances can be annulled, and that made a contract by ratification, which could not have been a contract by execution.

4th. By the charter and ordinances, it was provided that this class of improvements should be paid by a certain system of special taxation, and to check any tendency to improvidence or abuse of power, the council were prohibited from making any such special assessment until a majority of those who were to pay it should consent. Thus did the Legislature and the council endeavor to guard against general taxation for local improvements; yet if this contract is now enforced against the city, this mischief, which it was intended to prevent, will be accomplished by indirection. *Abb. N. Y. Dig., p.* 98, *Sec.* 11-12.

5th. The plaintiff contracted with the city at his peril. *Brady* v. *the Mayor, &c.*

He was bound to take notice of the ordinances of the city. They are by reference made part of his contract. The charter and the ordinance, both advised him that the petition of the property-owners was a condition precedent to any action in regard to the improvement—an essential step without which his contract was null, void, and of no effect. The ordinance itself placed the means of information wihthin his reach, by providing that such petition or consent should be filed by the city clerk, in his office. " A person entering into a contract with a municipal corporation for the performance of work on the streets thereof, to be paid by assessment on the district benefitted, is bound at his peril to examine the records in the city clerk's office, to see whether the preliminary steps required by the charter have been taken." *Swift* v. *Williamsburg*, 24 *Barbour S. C.,* 427.

6th. The plaintiff by his own showing, made a contract which could not be enforced. He contracted to receive

and collect his pay from the owners of property adjoining the improvement. He further contracted, for the provision is in the ordinance under which his contract was made, that the city should not be liable. There was no fraud—no mistake. He received a price to be collected in a certain way or not at all.

7th. Certificates were offered to him for at least a portion of his claim. These he refused to receive. He made no attempt to collect the amount of them.

8th. The city government, at the time this contract was entered into, certainly could not have contracted that the plaintiff should be paid for his work from the city treasury. The special contract is sought to be enforced—not a recovery sought upon a *quantum meruit*—not an action for damage against the city for failure to comply with its implied obligation to take such steps as might be requisite to enable the plaintiff to collect his pay according to his contract. If the city is liable on the contract, it must be upon the theory that by the contract, the city promised to pay in some other way than that in which the plaintiff agreed to receive and collect his compensation. This construction the words of the contract will not bear; and if the promise were express it would be absolutely null and void, as conflicting alike with the provisions of the charter and the general ordinance which we have quoted.

II. The Court erred in the construction of the contract.

1st. The contract is uncertain and confused. When a party contracts to " grade, cut, fill and remove the dirt from seventh street," and another to pay " twenty cents per cubic yard for the work so graded, cut, filled and removed," there are three constructions on the meaning of the words equally as plausible as that adopted by the judge who tried the case below: First and most reasonable, that the contractor is to receive twenty cents per cubic yard for the dirt moved in grading the street, or he may be entitled to twenty cents per yard for excavating, (digging the dirt

out,) twenty cents for removing (hauling the dirt,) and twenty cents for_filling, or twenty cents per yard for each of the operations—grading, cutting, filling and removing.

2d.  The Court erred in not receiving evidence tending to show what was the intention of the parties.  That the contract is clear and unambiguous no one can claim.  Susceptible as the contract is of various constructions, if the Court undertook to enforce it all, it should have been done only after every effort warranted by the law had been exhausted to remove the uncertainty, and ascertain the true intent of the parties, not from their declarations to make a contract different from the one expressed in the writing; but from all the contemporaneous facts and circumstances, which extrinsic testimony could establish to satisfy the minds of the Court and jury in what sense the words used were understood by the parties at the inception of the contract.  This the defendant below sought to do.  Evidence was offered generally of the construction put upon the terms of the contract by the contracting parties; and special matters were sought to be introduced, which must have had a controlling influence upon the construction of the contract. It was proposed to show the value of the work at the time the contract was signed.  If this evidence had demonstrated that it was reasonably worth no more than twenty cents per cubic yard for the earth actually moved in the grading of the street, this certainly would have been a circumstance in favor of the construction for which the defendant contended.  This evidence was rejected, and by this rejection it is now claimed that the Court violated a well recognized, legal principle.  The contract is either so incurably uncertain as to be utterly void, or if not at least so ambiguous and uncertain as to authorize and call upon the Court to have cast upon it all the light which could be gathered, as well from the class of evidence which was offered as from a collation of all the words used.  (2 *Parsons on Contracts*, 73-75; *Hildebrand* v. *Fogle*, 20 *Ohio*, 147;

*Hasbrook* v. *Paddock*, 1 *Barb.*, 635 ; 6 *Barb.*, 273 ; 13 *Pet.*, 89 ; 1 *Green, Sec.* 286,) and other cases cited in 2 Parsons on Contracts, 73,—note.

Words used, "Extrinsic facts, existing at the time a written contract is made, are always admissable in evidence to aid in the interpretation of the instrument, although not to contradict it." *Phipps* v. *Bostwick*, 22 *Barb., S. C.*, 314 ; *Spencer* v. *Babcock, id.* 326 ; *Miller* v. *Fichthorn*, 31 *Penn., State*, 252.

In striking analogy to the case at bar, is that of Thompson *v.* Brothers, 5 Mill, Lou. Rep., 275, cited in part II. ; Hill & Cowen's Notes to Phillips on Ev., 504.

The defendant who had contracted in writing, to erect certain houses at stipulated prices, claimed on the trial, that the roofs, which were *shed roofs*, should be allowed as extra work. The contract was silent as to the kind of roofs ; and the defendant, to preclude the supposition of the shed roofs being contemplated by the contract, offered the testimony of an architect, "as to the price paid for erecting the houses described." The evidence was excluded on the trial, and on this ground the verdict was set aside and the cause remanded with directions to the judge to hear the testimony.

If the terms employed be vague and general, or susceptible of diverse meanings, parole evidence is admissable of any extrinsic circumstance tending to show what persons or things were intended, or the true meaning of the terms used. (*Hall* v. *Davis*, 36 *N. H.*, 569-573.) To the same point, see Dessau *v.* Bours, 1 McAll, C. C. Cal., 20, cited in 19 U. S. D., 293, Sec. 703 ; Gallagher *v.* Black, 44 Maine, 99, Addison on Contracts, 847.

3d. The defendant below sought to introduce evidence tending to show that by custom and usages in Leavenworth, among contractors for work similar to that done by the plaintiff, the words "grade, cut, fill and remove," had a peculiar and technical significance. If such custom and

usage existed, the parties are presumed to have contracted with reference to it; especially when the words in the connection in which they were used, were of doubtful significance under the ordinary rules of interpretation. The right to apply such evidence to the interpretation of contracts has been so universally recognized, and so long settled, that it would be a work of supererogation to cumber this brief with authorities in its support. Reference is made therefore, generally to every elementary work on contracts and evidence, and the cases therein cited. The defendant, by this testimony, sought not to vary the terms of the writing; but to surround the Court and jury with all the facts, circumstances, and usages, which surrounded the parties at the inception of the contract, and to have its terms, when doubtful or uncertain, interpreted in the light thus thrown upon them.

*W. P. Gambell* for defendant in error, submitted:

I. The common seal of the corporation being affixed to the contract, and the signature of the proper officer having been proved to be genuine, the Court is bound to presume that the mayor did not exceed his authority in making the contract. *Angel & Ames on Cor., Sec.* 324, *and cases; Levering et. al.* v. *Mayor &c. of Memphis,* 7 *Humphrey,* 553; 8 *U. S. Dig.,* 76, *Secs.* 41-2, *p.* 13, *Sec.* 44, *p.* 329, *Sec.* 4; *Mayor of Culcutta* v. *Lawton,* 1 *Ves. & Bea.,* 226.

II. The Court properly construed the contract.

III. The Court was right in refusing to recieve evidence to show what was the intention of the parties. As to the terms, conditions and limitations of the agreement, it must speak for itself. The evidence offered, tended to contradict the meaning of the contract according to a fair interpretation of the words used. 2 *Pursons on Con., pp.* 60 *to* 78, *and cases cited; Abrich* v. *Ford,* 23 *How.,* 49; *Smith on Con. Law, pp.* 476-7, *and cases cited.*

47

. IV. The Court committed no error in refusing to receive the evidence as to custom and usage. *U. S.* v. *Buchanan*, 8 *How.*, 102; *Adams* v. *Otterback*, 15 *id.* 545; *Brittan* v. *Brandy*, 21 *id.* 538; *Foley* v. *Mason*, 6 *M'd.* 50; 1 *Greenleaf's Ev.*, Secs. 275, to 294, *and cases cited*; 2 *Parsons on Con., pp.* 49 to 60, *and cases cited.*

*By the Court,* CROZIER, C. J.

Upon the trial of this cause in the Court below, the only instruction given to the jury was the following:

"Under the pleading the plaintiff is entitled to recover for the number of cubic yards excavated, at twenty cents per cubic yard, and for the number of cubic yards filled at twenty cents per cubic yard."

In so charging the jury, the Court decided that the agreement set out in the paper upon which the action was founded, embodied a valid contract, and should be construed as the language of the instruction indicates; in both of which it is claimed that the Court erred.

At the time the paper was signed the City of Leavenworth, in its corporate capacity had power under its charter to provide for grading streets and for levying and collecting taxes for this purpose upon the adjacent property to the middle of the block; but no such tax was to be levied without the consent of a majority of the resident owners to be affected thereby. To carry out these provisions, ordinance No. 129 had been enacted, published and was in full force. It required, before a contract should be entered into, that a petition requesting the council to order a grade to be made, signed by a majority of the resident property owners to be affected by the tax for the proposed improvement, should be presented to the council. It also provided that every contract made in pursuance of its provisions, should contain a stipulation that the city should in no event be liable for the cost of the work. The petition filed in the Court below, alleges that no such petition

was presented to the council, and an inspection of the paper sued upon, shows that no such stipulation was incorporated into it; yet it is claimed that the agreement was a valid contract, or if not valid at its inception, there was such a subsequent ratification by the council as cured any original defect therein. Such seems to have been the opinion of the Court below.

Municipal corporations are creations of the law, and possess no powers except such as are conferred by law. They act under prescribed rules, and must act in accordance with them. They cannot in any sense be said to act as natural persons. When they undertake to make contracts they must observe the regulations prescribed in that behalf, else there will be no contract, and no subsequent act can cure the defect. Their power to contract must be delegated by law, while that of a natural person is inherent. The law affects the contracting power in the former, by conferring it and regulating its exercise; in the latter by restraining that which is inherent. Some acts of corporations, other than those created for governmental purposes, are to some extent and for some purposes estimated, measured and construed by the same rules that apply to the acts of individuals; but municipal corporations can exercise only conferred powers, and must exercise them according to the prescribed rules. When the law prescribes a pre-requisite to their ability to contract, the obligation to observe it cannot with impunity be disregarded. Nor will a subsequently attempted ratification, cure the defect. Such a construction would render nugatory the most salutary safeguards, and in effect make municipal corporations omnipotent. They must contract if at all, within the prescribed limits, and according to the prescribed forms. They take no powers by implication—certainly not the power to ratify an act they had no power to perform.

It is said that because the seal of the corporation is affixed to the paper sued upon, that it is an estoppel of all inquiry into the power of the corporation to make the con-

tract. Such a rule does not apply to municipal corporations, and there is no reason why it should apply to them. Their charters are usually public laws; their ordinances are published before taking effect; and all their business is conducted in the most public manner. All persons can inform themselves of their powers and the manner in which they are to be exercised; and if they propose to contract with them, are bound so to inform themselves at their peril.

The petition filed in the Court below alleges that the city authorities had wholly disregarded the requirements of their charter and ordinances. That they had attempted to make a contract which, under the circumstances, they had no power to make—that the very first step contemplated by law had not been taken. Yet it is alleged in the same paper, and insisted upon in the argument, that because they had so disregarded the law—and that too with the full knowledge of the plaintiff below—the city is liable upon the proposed contract.

Now it may be that a large amount of work, beneficial to the inhabitants of the city has been performed under the alleged arrangement, and that the person who performed it is morally entitled to compensation therefor; but that such compensation can be obtained as for work done upon the original contract, is wholly inadmissable.

The ordinance already referred to provided that the contractor who should grade a street must depend upon the adjacent property for his pay; and that his contract should contain a stipulation that the city should in no event be liable for his compensation. The paper sued upon although it does not contain this stipulation, yet does provide that the contractor shall receive his pay according to the ordinances of the city—which means that for such work his pay must come out of the adjacent property. If his contract were a valid one, and the proper city officer refused to issue to him the certificates provided for in the ordinance,

he possibly might require him to do so by mandamus. But he alleges that he cannot in any event make his money out of the adjacent property because the very first step necessary to its subjection had not been taken.

The allegations of the petition, then, considered in the light of the charter and ordinance, amount to about these: The city made a contract without observing the essential and indispensible pre requisites, and because of these omissions the only property which the law says shall be charged with the cost of the work, cannot be subjected to its payment—Therefore the contract is valid against the city. This conclusion presents to our minds somewhat the appearance of a *non sequiter*.

We think, therefore, that the mayor had no power to make such a contract as he undertook to make; and that the Court below erred in the first clause of the charge to the jury.

We are also of opinion that the Court erred in its construction of the contents of the paper. The object of the proposed arrangement was to grade a certain street; i. e., to bring the surface to a certain line. To accomplish this it may have been necessary to remove earth from one point to another within the street. The language used would cover either or all of these operations; and the word grade was intended to include them all. It was to be " graded " for twenty cents per cubic yard. The clay was to be measured but once. If there was to be a cut, its contents should be measured; but if any portion of the earth removed therefrom, should be deposited within the street, it should not be again measured. If any earth, more than the cut would supply should be necessary to bring it to grade, that was to be paid for at twenty cents per cubic yard.

We do not desire to be understood as expressing any opinion upon the right of the plaintiff below to recover against the defendant in another form. All we intend to say, is, that he can not in our judgment, legally maintain his action upon the paper referred to, as upon a contract.

The rulings of the Court below upon divers and sundry interesting questions of evidence were elaborately and exhaustingly discussed at the bar by counsel for plaintiff in error; and upon one of the most important—abstractly considered—" reference is made to every elementary work on contracts and evidence, and the cases therein cited;" but inasmuch as the views hereinbefore indicated dispose of the case so far as this Court can dispose of it, we do not deem it necessary, however delightful and entertaining it might be, to consider those questions now, or to imitate the apparent industry of counsel in the pursuit of authorities.

The judgment will be reversed.

All the justices concurring.