## HIRAM S. SLEEPER v. BULLEN & DUSTIN, ET AL.

1. CITY COUNCIL—*Jurisdiction of.* A contract made by the city council, under chapter 70, Laws of 1867, for grading a street in Leavenworth city, without a sufficient petition having first been presented to the council, is, and all the proceedings under such contract are, void as against the lot owners.

2. ESTOPPEL—*Property-owner.* A lot owner who has notice of all the proceedings, and makes no objection, but, on the contrary, encourages the contractors to do the grading, and tells them that they shall be paid therefor, is not entitled to an order of injunction to restrain the collection of a special tax levied on his lots, to pay for said grading.

3. —— *Estoppel of City.* Where a petition for grading a certain street appears to be good upon its face, and the city council of the city decides and declares that it is good, and makes the contract under it, and after the grading has all been done and the city has levied a special tax to pay for the same, the city is estopped from denying the validity of the contract or of denying its liability to the contractors for the grading.

4. CONTRACT—*Agreement—Want of Consideration.* Where public contractors are performing work under their contract, and a lot owner, through whose land the work is being done, requests them to proceed, and says that they shall be paid, and said contractors do proceed and complete the grading, not in consideration of said statements, but in consideration of their contract with the city, and look to the city for compensation, the lot owner is not liable to the contractors.

5. PRACTICE—*Jurisdiction—Appeal.* The Supreme Court, upon a petition in error, hears and determines such questions only as were passed upon by the court below.

*Error from Leavenworth District Court.*

ACTION to restrain the collection of a special tax assessed to pay for making certain local improvements on Fifth Avenue in the city of Leavenworth. It was commenced by *Hiram S. Sleeper* and others, as plaintiffs, against the *City of Leavenworth,* and John Hosick, as City Treasurer. Subsequently to the filing of plaintiffs' petition, *G. A. Bullen* and *C. Dustin,* the contractors who made the improvements, on their motion, were made parties defendant, they claiming to have an interest in the cause.

The plaintiffs alleged that there had not been any legal and proper petition presented to the city council praying that the improvements be made, and for want of such petition claimed that the taxes levied to pay for the said improvements were illegal and void.

*Bullen & Dustin,* in their answer, claimed that their contract with city was made with the city council in good faith, and in entire ignorance of the facts respecting the petition for the improvements; that they had performed and completed their contract, and that their work had been accepted by the city, and they demanded judgment against the city for the amount due them for making said improvements. Among the facts found by the court were these:

"1st. A petition for grading Fifth Avenue between certain points had been signed by the requisite number of property-owners affected thereby; and while said petition was in the custody of the city council, and without the consent of a majority of the property-owners residing upon and owning the property to be taxed to pay for such improvement, it was changed by one of the

signers, by striking out the words, '*the north line of Tanner's farm*,' and inserting the words, '*Fanny street, or where the grade will run out through the hill at Sigel Garden.*'

"2d. That the plaintiff *Sleeper*, while the work was progressing, and before the grading was done on part of his property, requested the defendants, Bullen & Dustin, the contractors, to do the work, and said to them that they should be paid, but that the property-owners would try to make the city lose it, and if they did, they would take the certificates and pay them."

Other facts are stated in the opinion of the court. As conclusions of law, the court found—that the ordinance for grading said Fifth Avenue, the contract made therefor, the assessments made thereunder, and all proceedings taken under said contract, were void, and created no valid lien against the property abutting upon said improvements and subject to taxation; that the plaintiff *Sleeper* is estopped from asserting the illegality of said contract, proceedings, and assessment; that the other plaintiffs are entitled to the relief sought in their petition; that there is due to the said Bullen & Dustin, defendants herein, on the certificates of sale on the lots owned by the said plaintiff *Sleeper*, the sum of $80.24; that there is now due to the said Bullen & Dustin, from the city of Leavenworth, for principal and interest on the certificates enjoined by the other three plaintiffs herein, the sum of $168.58.

The court made a decree, refusing the injunction prayed for, so far as related to the plaintiff *Sleeper*, and the special taxes assessed on his property, but granting a perpetual injunction in favor of the other plaintiffs, restraining the collection of the special taxes assessed on their property for said improvements. The court also

gave judgment in favor of said *Bullen & Dustin*, and against the *City of Leavenworth* for $168.58. Plaintiff *Sleeper* excepted, and now brings the case to this court for review.

*T. C. Sears* and *Sherry & Helm*, for plaintiff in error :

1. The court rightly held the special tax to be invalid ; and then erred in deciding that plaintiff Sleeper was estopped from asserting the illegality of the contract, proceedings and assessment.

The position taken by the court below, is, that Sleeper waived and was precluded from raising the question as to the legality of the tax, on the ground that there was some talk between him and the contractors, Bullen & Dustin, to the effect that they would get their pay. It might be contended that it was a breach of faith and good morals on the part of plaintiff in error to insist upon the illegality of the tax after an agreement to pay the same. But this is no reason why any court should refuse to grant an injunction as to a party where there is a clear violation of law governing the contract and proceedings. It has been long and correctly settled that a provision of law cannot be overreached by private compact or stipulation. Sedg. Stat. and Cons. Law, 109 ; 3 Caines, 129 ; 7 Peters, 276 ; 3 Coms., 548 ; 8 Johns., 409.

2. The contract was between the city, and Bullen & Dustin. Sleeper was no party to it. Could he, by telling the contractors that he *would not* pay the tax, and that they would lose the fruits of their labor, have influenced their conduct? Not at all. They had already commenced work on his property before the alleged promise on his part was made. The other parties told them nothing of the kind; yet they went on and completed the work according to the terms of their contract with the city.

*E. Stillings* and *T. A. Hurd*, for Bullen & Dustin:

1. Sleeper requested the contractors to proceed with their work; and he could not afterward enjoin them from making the money due them for said work. 15 Ohio St., 64; 1 Cal., 455.

2. The temporary injunction was continued and made perpetual in favor of the other plaintiffs on the sole ground that the petition on which the council acted was not sufficient. This was error. Their acts were in the nature of an adjudication on a subject which it was competent for them to decide. 29 N. Y., 106; 24 How., 287.

3. But if the petition was defective, it has been cured by legislative enactment. Chap. 51 of Laws of 1870, p. 122, was passed to cure the very defect complained of. That act took effect February 24th, 1870; and it makes the tax, notwithstanding the *omission* complained of, a lien on the lots for the amount for which this judgment was rendered, and would require the court, on the findings in this case, to render the same judgment which it has rendered.

That the law is valid, we refer to 3 Cushing, 483; Sedg. on Stat. and Cons. L. 201, 202; Cooley on Const. Lim., 102, 371, 383; 13 Mich., 215; 16 Mass., 245; 19 N. Y., 116; 17 Wisconsin, 71; 30 Conn., 149; 7 Ind., 316; 5 O. St. 225; 16 Cal., 332; 36 Penn. St., 135; 6 Minn., 292; 12 Md., 195; 16 Iowa, 508; 15 How., 494; 1 Green, N. J., 135.

It may be claimed that this law is not applicable to this case because it was pending in this court on appeal or error when the law was enacted. In answer to this, we claim that the law in force at the time of the decision governs, even in the appellate court. 6 Conn., 54; 8 Peters, 88; 5 Cranch, 281; 12 Md., 195.

*H. Miles Moore*, for the city of Leavenworth :

The main points in this case are the same as those presented in cases of *Leavenworth v. Laing*, and *Leavenworth v. Mills*, heard at this Term.   In addition to those points, we contend that the city council had the sole right to determine the validity and sufficiency of the petition; and having determined it, the court had no authority to review their action.

Again, Sleeper is estopped; before the grading was completed he requested the contractors to do the work, and said that they should be paid, and that he would take their certificates, etc.   5 B. Monroe; 39 N. J.

The opinion of the court was delivered by

VALENTINE, J.: On the 29th of May, 1867, a contract was made between the city of Leavenworth and George B. Case for the grading of a certain street in said city. Case assigned his contract to Bullen and Dustin.   The grading was done according to contract, and the city assessed a special tax on the lots adjacent to said street, and was about to sell said lots to pay said special tax, when the plaintiff Sleeper, with several others, petitioned the court below for an injunction to restrain said sale. On the final hearing of the case the court below refused the injunction in favor of Sleeper, and also rendered a judgment against him and in favor of the defendants Bullen and Dustin, for the amount of said special tax. This judgment, Sleeper desires to have reversed.

All the transactions which were the subject of this action, were had under chapter 70, Laws of 1867, (§ 2, p. 139;) and everything seems to have been sufficiently regular so as to give the city authority to sell said lots for said special tax, except that the petition upon which the
20

contract for grading was made, was changed by one of the signers while in the custody of the city, and without the consent of a majority of the property-owners residing upon and owning the property to be taxed. On the trial it was shown also, that while the work was being done, the plaintiff Sleeper requested the contractors to do the work, and said to them that they should be paid.

I. The first question in this case is, whether the contract with Bullen and Dustin, and the special tax levied to pay them for said grading, were legal? We think that they were not legal, for the reason that no sufficient petition was ever presented to the city council. (Ch. 70, Laws 1867, p. 139, § 2, sub-div. 2.) It therefore follows that said city had no legal right to sell said lots for said special taxes.

*1. City Council— jurisdiction. Contracts void for want of legal petition.*

II. The second question is, whether said Sleeper had a right to an injunction to restrain said city from selling said lots. We think he had not. (*Kellogg v. Ely*, 15 O. St., 64; *Wiggin v. Mayor*, etc., Paige 24.) A party who seeks equity, must do equity. His counsel say for him, "it might be contended that it was a breach of faith and good morals on the part of said plaintiff Sleeper to insist upon the illegality of the tax, after an agreement to pay the same; but that is no reason why any court should refuse to grant an injunction as to a party where there is a clear violation of the law governing the contract and proceedings." We think that a breach of faith and good morals is the strongest kind of a reason for refusing an injunction to protect the party in the exercise of such bad faith and bad morals. A party cannot encourage a wrong, and then ask a court of equity to protect him by an injunction from the consequences of that wrong. We do not think

*2. Estopped. One who encourages acts to be done cannot enjoin the doing of such acts.*

the plaintiff Sleeper is entitled to the remedy he seeks in this case.

III. The third question is whether the city or Sleeper, or both, or neither, are liable to the contractors for the grading, or whether the contractors can recover from any one for their services.

1. Is the city liable? We think it is. The petition appeared to be good upon its face. The city council, the 3. Contract—Estoppel. Party procuring contract to be fulfilled cannot deny its validity. agents of the city, and in whom is confided the province of deciding the question, decided and declared that the petition was good and valid; and now, after the contract has been executed on the part of the contractors, after the grading has all been done, the city is estopped from denying the validity of the contract, or its liability to the contractors for the grading. (*Louisville v. Hyatt*, 5 B. Munroe, 199, 201; *Bissell v. Jeffersonville*, 24 Howard, 287, 300; *Kearney v. Covington*, 1 Metc. (Ky.) 339; *Swift v. Williamsburg*, 24 Barb. 427, 433.)

2. Is Sleeper liable? Did he by contract, either express or implied, make himself liable? Or, has he either by words or acts estopped himself from denying his liability? We do not think that he is liable at all, either to the city or to the contractors. It does not follow that because he has no right, as the complaining party, to invoke the strong arm of a court of equity to interfere, and by an order of injunction, in advance, and before any wrong has been done, restrain an anticipated wrong, which possibly may never be committed, that he is entirely without remedy when attacked in a court of law. He cannot invoke equity against equity; but in law he may stand upon his legal rights. It is not, and cannot be claimed that there was any express contract between

Sleeper, and Bullen & Dustin; and neither can it be claimed that there was any implied contract between them. The agreement of Sleeper, such as it was, was on his side only. The contract (if it can be called a contract,) was not mutual. Bullen & Dustin never agreed to it, and it was never binding upon them. What Sleeper said to the contractors can, at most, only be said to be a proposition, and Bullen & Dustin never accepted his proposition. It is true, they did the grading in front of said lots, as he requested them to do; but they did it, not because Sleeper requested them to do it, nor because he said that they should be paid for doing it, but because they had made a contract with the city to do it, and because they knew that the city was bound by its contract to pay them for so doing it.

Usually when one person does work for the benefit of another, with his knowledge, and without any objection from him, and without any express contract between them, the law implies a contract between them, and requires the person for whom the work is done, to pay for the value of the work. But when the person who does the work does it without any expectation of receiving compensation from the person benefitted, the law presumes no such implied contract. In the case at bar, the work was not done on the property of Sleeper, as such, but on a public street. It was not done for the benefit of Sleeper, (except incidentally,) but for the benefit of the public; and the contractor did not look to Sleeper for compensation, but to the city. And even if the contract between the contractors and the city had been valid, as against Sleeper, he would not have been primarily liable to the contractors. He would have been liable to the city only, and the city

4.——Statements not considered, and not acted upon, create no liability.

would have been liable to the contractors. (*Leavenworth v. Mills*, ante p. 288.) Hence we cannot see how any implied contract can be presumed in this case.

But. with reference to estoppel: A party is never estopped from proving the truth of a transaction, and from relying upon such truth, unless he has by his words or acts, caused another. to act differently from what he otherwise would have acted, except for said words or acts. It is not contended that the city, (which is primarily liable to the contractors,) acted in any way different from what it would have acted, had Sleeper said nothing to the contractors; and it is not even contended that the contractors themselves acted in any way different from what they would have acted, had Sleeper said nothing to them. The city was liable to them. The city was bound to see them paid; and they had no inducement to act differently on account of what Sleeper had said to them, than they would have acted, had Sleeper never said anything to them upon the subject.

IV. The counsel for the city have attempted in this court, and for the first time, to raise another question. That question is, does chap. 51 of the laws of 1870, (it being " an act to amend an act to incorporate cities of the first class,") cure the irregularity, with respect to the petition presented to, and acted upon by the city council, so as to make Sleeper liable for the grading? The judgment in this case, in the court below, was rendered April 17th, 1869. Said chapter 51 took effect February 24th, 1870; and this case was brought to this court March 15th, 1870.

This court is an appellate court only, having no original jurisdiction except in *habeas corpus, quo warranto* and *mandamus*. It is established only for the correction of

errors of inferior courts, and not for the purpose of hearing and determining questions originally.

When a case is brought to this court from an inferior court, and especially if brought here upon a petition in error, this court will not as a rule try the case *de novo*, so as to hear and determine any new questions; but will only look into the record of the case, and will pass upon such questions only as have already been passed upon by the court below. The question now presented to this court was never presented to the court below, and was never passed upon by that court; and in the very nature of things, that court could not have committed any error concerning it.

This question involves several other questions : *First,* Does the said act of 1870 operate in this case ? *Second,* Is the said act constitutional and valid ? *Third,* Must the city proceed in accordance with the exact terms prescribed by section three of said chapter? or, *Fourth,* May the city if it chooses, take a judgment at law against the lot owners ? or, *Fifth,* Can the contractors take a judgment at law, as has been done in this case, against the lot owners ? But these questions are not now properly before us. After the city has determined what course it will pursue, whether it will proceed to collect said special taxes in the manner prescribed by said statute, or will take a judgment in its favor and against Sleeper, or will allow the contractors to take a judgment in their favor against Sleeper; and after the city has presented these questions to the district court, and that court has passed upon them, it will then be time enough for this court to determine them.

This case is remanded for further proceedings in accordance with this opinion.

All the Justices concurring.