GEORGE STEINMULLER *et al.* v. THE CITY OF KANSAS CITY, KANSAS, *et al.*

No. 129.

1. CITY— *Grading Streets — Petition.* Before the mayor and council of a city of the first class can grade a street at the cost of the owners of the lots abutting thereon, they must be specially authorized so to do by a petition signed by a majority of the resident owners of a majority of the front feet of the street to be graded. The presentation of such petition is jurisdictional, without which the proceedings are void.

2. LIMITATION OF ACTION — *Injunction.* The period limited by statute within which an action may be brought to set aside a special assessment made against the lots abutting upon a street to pay the cost of grading the same does not apply to bar a lot owner of an action to enjoin the collection of such assessment, when the proceedings upon which it is based are void.

MEMORANDUM.— Error from Wyandotte district court; HENRY L. ALDEN, judge. Action by George Steinmuller and others against the city of Kansas City and others for an injunction. Judgment for defendants. The plaintiffs bring the case to this court. Reversed. The opinion herein, filed April 1, 1896, states the material facts.

*W. S. Carroll,* for plaintiffs in error.

*K. P. Snyder* and *T. A. Pollock,* for defendants in error.

The opinion of the court was delivered by

GARVER, J.: On September 3, 1891, the plaintiffs in error filed their petition in the district court of

Wyandotte county, seeking to enjoin the defendants in error from collecting a certain assessment which the city of Kansas City sought to enforce against their lots for the cost of grading the street upon which the lots fronted. The court below sustained a demurrer to the plaintiffs' evidence, and rendered judgment in favor of the defendants for costs.

The evidence tended to prove that, on August 14, 1888, a petition was presented to the mayor and council of said city by certain resident owners of real estate situated on the street thereafter improved, which petition was as follows:

"We, the undersigned, residents of Kansas City, Kan., and owners of real estate described opposite our names abutting upon Tenth street, between Minnesota avenue and the second standard parallel, would most respectfully petition your honorable body to grade the street to the established grade of the same, and, as in duty bound, will ever pray."

This petition had the indorsement of the city engineer that the signers of the petition constituted a majority of the resident property owners of the majority of the front feet on the street therein described. It was ordered spread upon the journal of the council, and thereafter an ordinance was passed, approved September 10, 1888, which, in part, was as follows:

"ORDINANCE No. 503.

"An ordinance declaring it necessary to grade Tenth street from Minnesota avenue to the second standard parallel (north side).

"*Be it ordained by the mayor and councilmen of the city of Kansas City:*

"SECTION 1. That in pursuance of a petition of a majority of the resident property owners owning a majority of the front feet of abutting property on the street hereinafter mentioned, for which they have petitioned, it is hereby declared necessary to grade Tenth street, from Minnesota avenue to the second standard

parallel (north side), its full width, at the cost of the abutting property owners on said street between the said respective points as provided by law. The same to be paid for, however, in the first instance from the proceeds of improvement bonds of the city of Kansas City, payable by installments as may be provided by ordinance, and the said grading is hereby ordered to be done."

The grading provided for in said ordinance having been completed, the city council passed as ordinance, approved April 22, 1891, assessing the cost of grading said street against the several lots and parcels of land abutting thereon. The amount of the assessment against the lots of the plaintiffs was thereafter duly certified to the county clerk of said county and entered upon the tax-roll.

Two questions are presented for our consideration: First, was the assessment complained of void? and, second, are the plaintiffs barred from maintaining this action because it was not commenced within 30 days from the time the amount of such assessment was ascertained?

The mayor and council of a city of the first class had authority, at the time this improvement was made, to grade any street, alley or avenue in the city, when such improvement was deemed necessary; the cost thereof to be "paid out of the general-improvement fund, except as otherwise provided by law." (Gen. Stat. 1889, ¶ 557; Laws 1887, ch. 99, § 4.) The time and manner of doing such work was left to the good judgment and discretion of the mayor and council, and as they might deem for the best interests of the city. The same statute also provided:

"In case a petition of the majority of the resident property owners of a majority of the front feet on any street, or part thereof, shall petition the mayor and

council to grade any street, . . . at the cost of the owners of the lands fronting upon the street described in the petition, and if such petition shall be ordered spread upon the journal of the council by a majority of the council elect, the mayor and council shall thereafter have power to assess the cost of such improvement againts the lots and parcels of land abutting on such street so improved abutting property.''

The city council attempted to act under this proviso, which is an exception to the general rule for the payment of the costs of such improvement, and attempted to assess the entire cost to the abutting lotowners. As a municipal corporation possesses only limited and special powers, authority to do an act must be either expressly granted by the charter, or be such as is necessarily implied to carry out the granted powers. The power to charge the cost of street grading against the lots abutting upon the street so improved can only be exercised in exceptional cases, and after a compliance with certain statutory conditions. The main feature of these conditions is that there shall first be presented a petition signed by a certain number of the resident property owners, asking, not merely that such grading be done, but that it be done *at the cost of the owners of the lots fronting upon the street described in the petition.* This is jurisdictional. Unless such a petition be presented, the mayor and council are without the semblance of power to assess the entire cost of the improvement against the lots on that street, and all proceedings had with a view thereto are void. (*City of Leavenworth v. Rankin*, 2 Kan. 357; *Sleeper v. Bullen*, 6 id. 300; *Noffzigger v. McAllister*, 12 id. 315; *Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 id. 129; *Newman v. City of Emporia*, 32 id. 456; *Comm'rs of Wyandotte Co. v. Barker*, 45 id. 699; *City of Covington v. Casey*, 3 Bush, 698;

*Henderson v. City of Baltimore*, 8 Md. 352; *Swift v. Williamsburg*, 24 Barb. 427.)

There is nothing in the petition presented in this case suggesting that the signers desired or intended that the cost of putting the street on grade should be assessed against them and other owners of property on that street. This cannot be inferred from the mere fact that they petitioned to have the work done. The right of petition exists independently of statute. It is not only proper, but is a common practice, to petition representative bodies to exercise an authority which is exclusively conferred upon them for the effecting of objects in which the petitioners are interested. It is not necessary that city officials should wait for the presentation of a petition before they proceed to the making of such general improvements in the city as they may deem necessary. But before they can deviate from the general rule, and make an improvement of this character at the cost of particular persons, the consent of such persons must be first given in the manner provided by statute. Such consent is a precedent condition which is jurisdictional, and must appear from the petition. As said in *Swift v. Williamsburg*, 24 Barb. 427:

"The consent of the parties interested in such improvements cannot be dispensed with. The responsibility which the conditions precedent created by the statute impose, cannot be thrown off in this manner, for the effect of doing so is to shift entirely the burden of making these local improvements, to relieve those on whom the law sought to impose the expense, and to throw it on others who are not liable either in law or morals."

If it was intended in this instance that the work should be done at the expense of particular lotowners, the petition was entirely lacking in that which

constituted the essential fact necessary to be stated to justify the action taken upon it. It was the same as no petition. (*Turrill v. Grattan*, 52 Cal. 97.) We therefore hold, upon this branch of the case, that the assessment attempted to be made against the lots of the plaintiffs in error was without authority, and, consequently, was illegal and void.

Are the plaintiffs barred, by lapse of time, of any remedy against this illegal assessment? For the purpose of requiring promptness in making objection to the validity of assessments for such improvements, the legislature provided :

"No suit to set aside the said special assessments, or to enjoin the making of the same, shall be brought, or any defense to the validity thereof allowed, after the expiration of 30 days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained." (Gen. Stat. 1889, ¶ 590 ; Laws 1887, ch. 101, § 1.)

We do not think this statute can be interposed to aid an assessment which is void on jurisdictional grounds on the face of the proceedings. It should be held to apply only to such defects and irregularities in the proceedings as would render them voidable, but not void. So far as it concerns the right of the city to charge the entire cost of this work to these particular lots, the proceedings are mere nullities — the same as if never attempted. They neither confer any rights upon the city nor create any liability as against these plaintiffs. Being mere nullities, the plaintiffs could entirely ignore them as ineffectual to create any charge upon their property. The ascertainment of the amount of the proportionate cost of the improvement which it was sought to charge against each lot was also a nullity. Up to that time, nothing had been done which afforded the plaintiffs legal cause of

complaint. But when the assessment had been certified to the county clerk, and the amount thereof placed on the tax-roll as a direct charge upon the property of the plaintiffs, an act was done and proceedings were instituted which would culminate, if not interrupted, in placing a cloud upon their title. They then, for the first time, had legal cause for complaint. This provision as to the limitation of the time within which an action may be brought confers no rights. Like all limitation laws, it does not affect the cause of action. It simply destroys the remedy, denying relief to him who has unreasonably slept upon his rights, and leaving the parties where it found them. In no case is it effective to create a cause of action where none existed, nor is it operative except as against one who has an existing right of action during the period of limitation. How, then, in this case, can it be said that the plaintiffs are barred by a failure to institute proceedings at a time when they had no legal ground for complaint, and therefore no right of action? As the proceedings which led up to the assessment were had without jurisdiction, and consequently without any legal effect upon the property rights of the plaintiffs, the mere failure to act certainly could not alter the situation of either party. As said in *McCoy v. Anderson*, 47 Mich. 505, "any other view would be open to the objection of attempting to deprive parties of their property without due process of law, and this evidently was not contemplated by the statute relied upon." One may ordinarily wholly disregard void proceedings, so long as no attempt is made to enforce them. (*City of New Haven v. F. H. & W. Rly. Co.*, 38 Conn. 422; *Williams v. Saginaw*, 51 Mich. 120.) It necessarily follows, as void proceedings affect noth-

ing, that legal rights cannot grow out of them by mere lapse of time, without the introduction of other circumstances or conditions affecting the parties. To this effect our supreme court expressed itself in *Marshall v. City of Leavenworth*, 44 Kan. 459, 464, with reference to the same statute that is now under consideration. In that case, speaking of the effect of the mayor and council proceeding to make such improvements without the express statutory authority, it is said:

"Any assessment made to pay for such improvements would be absolutely null and void, and the parties prosecuting would not be required under the aforesaid limitations contained in section 1, chapter 101, of the Laws of 1887, to commence any action within 30 days after the making of the assessment, to set aside the same."

As bearing upon this proposition, see, also: *Shoat v. Walker*, 6 Kan. 65; *Sapp v. Morrill*, 8 id. 677; *Waterson v. Devoe*, 18 id. 223; *Hammerslough v. Kansas City*, 46 id. 37; *Williams v. Saginaw*, 51 Mich. 120; *McCoy v. Anderson*, 47 id. 505; *Moore v. Brown*, 11 How. 414. We therefore hold, as the evidence tended to show that the assessment was void, and that this action was, consequently, not barred by any statute of limitations, that the court erred in sustaining the demurrer to the plaintiffs' evidence.

The judgment will be reversed, and the case remanded for further proceedings in accordance with the views expressed in this opinion.

All the Judges concurring.